STATE of Wisconsin, Plaintiff-Respondent,

v.

Janice E. MONOSSO, Defendant-Appellant.†

Court of Appeals

*Nos. 80–1626–CR, 80–1627–CR. Submitted on briefs April 30, 1981.*
*—Decided June 10, 1981.*
(Also reported in 308 N.W.2d 891.)

For the defendant-appellant the cause was submitted on the brief of *Glenn L. Cushing,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Andrew L. Somers, Jr.,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J. This case presents a first impression issue regarding warrantless entries by fire investigatory officials during or immediately following a fire. Janice Monosso was adjudged guilty of arson pursuant to sec. 943.02(1)(a), Stats. As a result of her conviction, she was placed on probation and ordered to make restitution. Mrs. Monosso appeals her conviction, arguing that the trial court erred in failing to suppress evidence seized during a warrantless search of her office. She also contends that the imposition of $44,426.40 in restitution as a condition of probation was an abuse of discretion in light of her inability to pay. We affirm.

Robert Greenwaldt owned an office building which was damaged by fire on September 25, 1977. Both Mr. Greenwaldt and Mrs. Monosso maintained offices in Greenwaldt's building.

On the date of the fire, Mrs. Monosso had been at Mr. Greenwaldt's home at approximately 9:30 p.m. in a depressed and upset mental state. Due to her condition and a suspected ingestation of drugs, Greenwaldt called a rescue squad and reported an overdose. Upon Mrs. Monosso's departure from his residence prior to the arrival of the requested emergency aid, Greenwaldt informed officials that the victim had left in a yellow Capri automobile.

At approximately 11:08 p.m. on that same date, the City of Waukesha Fire Department received an alarm of a fire at the Greenwaldt office building. Assistant Fire Chief Seidl arrived at the fire scene at approximately 11:11 p.m. He was aware that the owner of the building had previously reported a suspected drug overdose of a woman, and he knew that the victim was driving a yellow Capri. When he arrived at the fire, Seidl noticed a yellow Capri parked in a lot adjacent to the building. He further noticed that the door to the building was being held open by a brick. Brick powder or

dust similar in color to the brick holding open the door was noticed on a window adjacent to the rear door.

The fire was substantially confined to a subbasement office maintained by Mr. Greenwaldt. The entire building, however, suffered from superheated air and smoke. The fire was extinguished only after approximately two and one-half hours of effort. In order to subdue the conflagration, normal firefighting tactics were employed. During this process, every room and closet were checked out solely for rescue purposes.

Sometime after 1:40 a.m. on September 26, 1977, Assistant Fire Chief Seidl, along with Deputy Fire Marshal Krupka and Fire Chief Land, entered Mrs. Monosso's office for the purpose of investigating the cause of the blaze. Upon entering the office, they noticed a brick on the desk as well as brick powder next to a window boarded up with drywall material. There was glass on the floor. The fire officials were in the office for approximately ten minutes and removed nothing from the office. The brick found on Mrs. Monosso's desk was described as similar to the brick found holding open the door.

After the fire had been extinguished, a police guard was posted, and the fire officials left the building. Because the office building could not be properly checked for causes of the fire that night due to the intense heat, Deputy Fire Marshal Krupka and Detective Ronald Miller returned the next morning at approximately 8:00 a.m. to complete the investigation. During this return visit, Krupka and Miller once again entered Mrs. Monosso's office for further investigation. Pictures were taken of the brick located on her desk. Pictures of the walls of the office were also taken. Pieces of brick, a paperweight and a stapler were seized and removed from the office. The brick by the rear door was also seized.

During the investigation, attempts were made to eliminate all accidental causes of the fire. The fire

marshal concluded at the end of his review that the fire was originated by a person.

Prior to trial, Mrs. Monosso moved to suppress physical evidence seized and photos made during the warrantless entry into her office on the morning of September 26, 1977. The parties stipulated that the search was warrantless and without consent. The trial court denied the motion by written order.

Subsequent to sentencing, Mrs. Monosso brought a post-conviction motion requesting the trial court to modify the conditions of her probation by removing the requirement that she make restitution. The motion was based on both Mrs. Monosso's inability to pay and the fact that an insurance company to whom the restitution would be paid had an adequate remedy through the civil process. The trial court also denied this motion.

## WARRANTLESS SEARCH

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Wisconsin Constitution, art. I, §11 contains substantially the same language. Warrantless searches have been deemed to be "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). These exceptions are "jealously and carefully drawn." *Jones v. United States*, 357 U.S. 493, 499 (1958). In this case, we are called

upon to determine whether the warrantless 8:00 a.m. search of Mrs. Monosso's office falls within one of the "established and well-delineated exceptions." We believe it does.

Both the State and the defendant argue that the case of *Michigan v. Tyler*, 436 U.S. 499 (1978), is controlling in this case and is supportive of their respective positions. In *Tyler*, the United States Supreme Court addressed the issue presented by this appeal—warrantless fire scene searches. The Court made clear that the fourth amendment governs such activity:

> [T]he "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment. [Citations omitted.]

*Id.* at 504–05 *(quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967).* The *Tyler* case presented a factual situation remarkably similar to the one confronted here. In *Tyler,* two men were charged and convicted of conspiracy to burn real property, and one of the two was convicted of burning real property and burning insured property with the intent to defraud. The fire occurred at a furniture store which the two men operated.

The Tyler fire occurred shortly before midnight. When the fire chief arrived at approximately 2:00 a.m., he was informed that containers of flammable liquid had been found inside the building. A police detective arrived at approximately 3:30 a.m., and pictures of the containers and the interior of the store were taken. Further investigative efforts were abandoned at that time be-

cause of the smoke and heat. By 4:00 a.m., the fire had been extinguished, and all persons left the scene. At approximately 9:00 a.m., an assistant fire chief returned with the detective, and a further search was made of the premises. The search revealed suspicious burn marks in the carpet as well as pieces of tape containing burn marks. The pieces of tape were found on a stairway. Pieces of the carpet and sections of the stairs were removed as evidence.

Several weeks later, a police officer assigned to the arson section returned and took additional photographs. At that time, the electrical system was also further inspected. All searches were warrantless and without consent.

The Supreme Court found the first two of the three searches to fall within an exception to the fourth amendment search and seizure ban. With regard to the first entry during the actual fire, the Court reasoned:

A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry "reasonable." Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze. And once in a building for this purpose, firefighters may seize evidence of arson that is in plain view.

*Id.* at 509.

The Supreme Court also recognized that fire officials have a duty to do more than just fight fires.[1] In doing so, the Court found the second entry permissible.

---

[1] A Wisconsin state statute also imposes upon fire officials a duty to investigate the causes of fires. Section 165.55, Stats., reads in pertinent part:

(1) The chief of the fire department or company of every city, village and town in which a fire department or company exists, and where no fire department or company exists, the city mayor,

Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished. And if the warrantless entry to put out the fire and determine its cause is constitutional, the warrantless seizure of evidence while inspecting the premises for these purposes also is constitutional. [Footnotes omitted.]

*Id.* at 510. The Court reasoned that "the morning entries were no more than an actual continuation of the first [entry], and the lack of a warrant thus did not

---

village president or town clerk shall investigate or cause to be investigated the cause, origin and circumstances of every fire occurring in his city, village or town by which property has been destroyed or damaged when the damage exceeds $500, and on fires of unknown origin he shall especially investigate whether the fire was the result of negligence, accident or design. Where any investigation discloses that the fire may be of incendiary origin, he shall report the same to the state fire marshal.

. . . .

(10) The state fire marshal, deputy state fire marshals or chiefs of fire departments shall apply for and obtain special inspection warrants prior to the inspection or investigation of personal or real properties which are not public buildings or for the inspection of portions of public buildings which are not open to the public for the purpose of determining the cause, origin and circumstances of fires either upon showing that consent to entry for inspection purposes has been refused or upon showing that it is impractical to obtain the consent. The warrant may be in the form set forth in s. 66.123. The definition of a public building under s. 101.01(2)(h) applies to this subsection. No special inspection warrant is required in cases of emergency or in searches of public buildings which are open to the public.

invalidate the resulting seizure of evidence." *Id.,* 436 U.S. at 511.

With regard to the search occurring weeks after the fire, however, the Court found that it was clearly detached from the initial exigency and, therefore, in violation of the warrant requirement.

We believe the facts of this case fall directly within the rationale of the *Tyler* decision. In the instant case, prompt official action was necessary to determine the cause and extent of the fire damage. The entire building had to be viewed in order to rule out accidental causes. In returning to the fire during morning daylight hours, the officials were simply continuing the prior investigation which had been interrupted by heat and nighttime circumstances. The return and reentry of a building to inspect fire damage has been held to be reasonable, *Michigan v. Tyler, supra,* and under the facts of this case was reasonable. Evidence seized during such an investigation, therefore, was properly admissible at trial.

Mrs. Monosso argues that the facts of the *Tyler* case are somewhat different from the facts in the present case. She points out that the search which took place in the *Tyler* case only covered those areas damaged by the fire itself. The search in this case also included her office, which was untouched by fire. She argues that the search here was not confined to the scene of the fire, and it was not designed to discover the cause of the fire. She contends, instead, the search was aimed at gathering independent evidence of her complicity. This being the case, it is argued that the search exceeded the permissible scope of the fire scene exception and therefore was illegal.

We believe the evidence shows, and the trial court correctly found, that the search was in fact intended to reveal the cause of the fire and not intended to secure

evidence of Mrs. Monosso's guilt.[2] It was the fire marshal's duty to determine the cause of the fire. To this end, he had the right and the duty to view the entire building, not just that portion damaged by fire, to rule out accidental causes.

The fact that evidence was seized during a search taking place after complete extinguishment of the fire is of little consequence. The entire building was filled with superheated air as a result of the fire. The increased temperature when combined with the darkness of night made an immediate search of the building following the extinguishment of the fire futile. The fire officials, therefore, were forced to return the next morning to view the fire scene.

Mrs. Monosso's office was located in close proximity to the office wherein the actual fire occurred. The office was searched with a view toward ascertaining the intentional or accidental cause of the fire. The officials did not look into the private papers, documents or personal effects located in Monosso's office. The area was viewed to check out the ventilation, heating and electrical systems and to fully investigate all possible causes of the fire. During this time, the bricks were observed and seized as evidence. Mrs. Monosso's argument that only the area damaged by fire can be legally searched too narrowly circumscribes fire investigation. If accepted, it would render fire officials incapable of carrying out their duty to establish the cause of fires. In order to fully investigate all possible causes, fire officials must be allowed access to an entire building for a reasonable period of time to facilitate the determination of the

---

[2] A trial court's order denying suppression based upon findings of fact should not be reversed unless the appellate court finds that the findings are against the great weight and clear preponderance of evidence. *Bies v. State,* 76 Wis.2d 457, 469, 251 N.W.2d 461, 467 (1977).

cause. We believe this teaching can be found in the *Tyler* case and that the facts in this case clearly fall within the exception created by *Tyler*.

## ORDER FOR RESTITUTION

Mrs. Monosso was sentenced to probation for a period of five years. As a condition of that probation, the court ordered restitution "in full to the party which has sustained and incurred the loss." Subsequently, an order was entered setting the precise amount of restitution at $44,426.40. At sentencing, Mrs. Monosso was told that the trial court intended to monitor her probation and that it expected a legitimate and honest effort to be made to reach the restitution goal. The trial court ordered a six month review, and when that time came, a hearing was held to consider her ability to pay.

A trial judge is granted authority to impose restitution as a condition of probation by sec. 973.09(1), Stats. *Thieme v. State,* 96 Wis.2d 98, 101–02, 291 N.W.2d 474, 476 (1980). An appellate court should review conditions of probation such as restitution to determine their validity and reasonableness as measured by how well they serve to effectuate the objectives of probation. Such objectives are rehabilitation and protection of the state and community. *Huggett v. State,* 83 Wis.2d 790, 798, 266 N.W.2d 403, 407 (1978). Once restitution has been required:

> [T]he probationer, after 6 months have lapsed since the imposition of the order of restitution, may petition the sentencing court to adjust or otherwise waive payment or performance of any ordered restitution or any unpaid or unperformed portion of restitution.

Sec. 973.09(3) (b), Stats.

During the hearing held to establish Mrs. Monosso's ability to pay, the trial court was informed that although

she was at that time unemployed, she had considerable assets. She had substantial equity in a home which she owned. She owned a Lincoln Mark V automobile and recently received a substantial brokerage commission and insurance settlement. She also received approximately $1,500 per month in payments from social security and her former husband. Mrs. Monosso had a strong history of doing well for herself in the business world.

The court formulated a well-founded belief that in the past Mrs. Monosso had shown an ability to obtain success, and it concluded that such success was sufficient to warrant optimism that she may in fact eventually meet the restitution requirement. We believe this conclusion is justified by the record. If at a later date the trial court reaches the belief that Mrs. Monosso cannot meet the restitution requirement, it can reduce the amount to be paid or waive all payments. Sec. 973.09(3)(b), Stats. We believe, however, that the evidence supports the present restitution order, and we affirm the trial court's conclusion as an act of sound and reasonable discretion.

*By the Court.*—Judgment and order affirmed.