STATE of Wisconsin, Plaintiff-Respondent,

v.

Leo E. WANTA, Defendant-Appellant.†

Court of Appeals

*No. 98–0318–CR. Submitted on briefs November 11, 1998.—Decided February 4, 1999.*

(Also reported in 592 N.W.2d 645.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James M. Shellow* and *Craig W. Albee* of *Shellow, Shellow & Glynn, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, *William C. Wolford*, assistant attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

ROGGENSACK, J. Leo Wanta appeals from his conviction of two counts of intentionally filing false and fraudulent Wisconsin individual income tax returns with intent to evade the income tax due in violation of § 71.83(2)(b)1., STATS., and four counts of intentionally concealing property upon which levy was authorized with the intent to evade the collection of taxes in violation of § 71.83(2)(b)3. Wanta claims that his conviction should be overturned for the following reasons: (1) Section 971.14(4)(b), STATS., unconstitutionally requires proof of incompetence by clear and convincing evidence when an accused claims he is competent; (2) the evidence does not support his convictions; (3) venue was improperly maintained in Dane County; (4) the circuit court failed to give the jury sufficient instructions to afford him a fair trial; (5) he was denied the effective assistance of counsel; (6) he was denied counsel of his choice; and (7) he has paid the amount owed. We conclude that no appealable error was committed and therefore, we affirm.

## BACKGROUND

In 1988, Wanta allegedly kept money he received in the name of a corporation he controlled, New Republic/USA Financial Group, Ltd. (New Republic), and made payments from the corporate accounts for his own benefit. The Department of Revenue (DOR) suspected that Wanta used the New Republic name to

avoid collection of outstanding tax warrants against him for the back taxes of Falls Vending Company, a company with which Wanta had been associated in the early 1980's.

DOR received Wanta's 1988 and 1989 state tax returns in June 1991. The 1988 return contained no entry for federal adjusted gross income. Wanta attached federal form 4868 to his state return. On line one of form 4868, Wanta entered a "0" to indicate his federal tax liability for 1988. Wanta's 1989 state tax return contained a dash on the line designated as federal adjusted gross income. Wanta and his wife signed all of the returns, indicating that the information was "true, correct and complete."

On May 8, 1992, the State charged Wanta with two counts of filing false tax returns to evade 1988 and 1989 taxes and with four counts of concealing property upon which levy was authorized. Prior to the preliminary hearing, because the issue of Wanta's competency had been raised, the court ordered a competency evaluation which was completed by Dr. Parikh. At the first competency hearing held on March 10, 1994, Wanta asserted that he was competent. Dr. Parikh's report, which concluded that Wanta was competent, was presented, and both Wanta's attorney and the State waived the presentation of additional evidence regarding competency. The circuit court found Wanta competent to stand trial.

On June 22, 1994, two weeks prior to the then scheduled trial date, Wanta's second attorney, John Chavez, filed a motion to withdraw as counsel. The court denied the motion, reasoning that it would not release Chavez until the court was certain that successor counsel had been secured.

On June 24, 1994, the court ordered a second competency evaluation, after Chavez filed a motion asserting that Wanta was unable to assist in his own defense. At the second competency hearing on July 13, 1994, Dr. David Mays concluded that Wanta was incompetent. Dr. Mays noted Wanta's grandiose and unbelievable claims and doubted whether Wanta could "transcend his delusional disorder to the extent that he is able to work with his attorney to provide a plausible defense to present in court." Because Wanta again asserted that he was competent, the court noted that the State bore the burden of proving his incompetence by clear and convincing evidence. The next day the court found Wanta incompetent and ordered him committed to the Wisconsin Department of Health and Social Services (DHSS),[1] pursuant to § 971.14(5), STATS.

On November 4, 1994, the court held a third hearing on competency, at which Wanta again claimed he was competent; Dr. Mays again testified that in his opinion Wanta was not competent. The court again found Wanta incompetent and continued his commitment. On February 3, 1995, the court held a fourth competency hearing. Prior to the hearing, the court, counsel for the State and counsel for Wanta all had received a report from Dr. Lee, who had recently examined Wanta. Both the State and Wanta's attorney waived the opportunity to present additional evidence. Wanta continued to maintain he was competent. Relying on an evaluation letter from Dr. Lee, who was of the opinion that Wanta could appreciate the charges against him, assist in his own defense, and if found guilty, understand the consequences, the court found

---

[1] The Department of Health and Social Services is now the Department of Health and Family Services.

Wanta competent to proceed to trial, thereby releasing him from commitment to DHSS.

On May 2, 1995, the court heard another motion to withdraw filed by Chavez and a motion from Attorney Steven Epstein conditionally requesting to be substituted as Wanta's counsel, if the court would reschedule the trial date to give Epstein time to prepare. The court denied both motions.

On May 8, 1995, Wanta's four-day trial commenced. DOR agent Dennis Ullman testified for the State. Using a simple method of showing actual payments to or on behalf of Wanta from a New Republic bank account, Ullman demonstrated that Wanta had taxable income in 1988 and 1989. Wanta was the only defense witness. He testified that he never intentionally filed fraudulent tax returns; that he had no income between 1986 and 1989, but survived by borrowing money and selling personal property; that money received and vehicles purchased were for his business; that he was not a resident of Wisconsin in 1989; and that he was not liable for the Falls Vending taxes because he was not the owner of the company. Wanta's testimony also included grandiose and unbelievable claims.

The jury convicted Wanta on all six counts. On September 20, 1995, Wanta's new attorney, Epstein, again expressed concern about Wanta's competency, even though Wanta still asserted that he was competent. The court ordered a fifth competency evaluation. On October 27, 1995, a competency hearing was held and the court admitted the reports of Doctors Van Rybroek, Friedman and Treffert. No other evidence was presented. On October 30, 1995, the court issued an opinion concluding that Wanta was competent.

On November 20, 1995, the court sentenced Wanta to two years in prison on Counts 3 through 6, to run consecutively, for a total of eight years and imposed a six-year consecutive probation sentence on Counts 1 and 2. On June 3, 1996, the court ordered Wanta to reimburse the State Public Defender $4,167.64 for the cost of legal representation. The court also ordered Wanta to pay restitution of $24,900.91, which did not include Wanta's payment of $14,129 applied to a civil fraud penalty. On January 23, 1998, the court reduced the total restitution to $14,128.10 because the original amount erroneously included interest. The court denied Wanta's postconviction motions, and this appeal followed.

## DISCUSSION

### Standard of Review.

This case presents several questions reviewed under various standards. We review challenges to the sufficiency of the evidence necessary to support a verdict *de novo*, applying the same standards as the circuit court. *Lisa R.P. v. Michael J.W.*, 210 Wis. 2d 132, 140, 565 N.W.2d 179, 183 (Ct. App. 1997). We will not reverse a verdict unless, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the State, there is no credible evidence to sustain a finding of guilt beyond a reasonable doubt. *See* § 805.14(1), STATS.

In contrast, we review challenges to the constitutionality of a statute without deference to the decision of the circuit court. *State v. Smith*, 215 Wis. 2d 84, 90, 572 N.W.2d 496, 497 (Ct. App. 1997).

■
Whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *State ex rel. Flores v. State*, 183 Wis. 2d 587, 609, 516 N.W.2d 362, 368–69 (1994) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). The circuit court's findings of fact will not be reversed, unless they are clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711, 714–15 (1985); § 805.17(2), STATS. However, ultimately whether counsel's conduct violated Wanta's right to effective assistance of counsel is a legal determination, which this court decides without deference to the circuit court. *State v. (Oliver) Johnson*, 133 Wis. 2d 207, 216, 395 N.W.2d 176, 181 (1986).

■
Whether a factual basis exists for appointing new counsel is within the discretion of the circuit court. *State v. Kazee*, 146 Wis. 2d 366, 371, 432 N.W.2d 93, 96 (1988). It is also within the circuit court's discretion to order restitution. *State v. Monosso*, 103 Wis. 2d 368, 378, 308 N.W.2d 891, 896 (Ct. App. 1981). When we review a discretionary decision, we examine the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *State v. Keith*, 216 Wis. 2d 61, 69, 573 N.W.2d 888, 892–93 (Ct. App. 1997).

**Competency.**

Wanta contends that when a defendant claims to be competent at the start of an evidentiary hearing held to determine his competence to stand trial, § 971.14(4)(b), STATS.,[2] violates due process and equal

---

[2] Section 971.14(4)(b), STATS., states in relevant part:

protection because it requires proof by clear and convincing evidence that the defendant is incompetent. He contends that this burden of proof, even though it is allocated to the State and not to the defendant, is contrary to the holding in *Cooper v. Oklahoma*, 517 U.S. 348 (1996), because it allows defendants who are more likely than not incompetent, to stand trial.

Wanta does not argue that there was proof offered at the February 3rd hearing which would have supported a finding that he was more likely than not incompetent, nor does he contest that the only evidence offered at the February 3rd hearing supported the circuit court's finding of competency. Therefore, based on his contentions and the evidence before the court, we interpret Wanta's challenge to the constitutionality of § 971.14(4)(b), STATS., as a facial challenge wherein he seeks to strike down all possible applications of the statute when a defendant's competency has been called into question in the course of a criminal proceeding, and the defendant claims to be competent. *See Bowen v. Kendrick*, 487 U.S. 589, 600 (1988). In a facial challenge to the constitutionality of a statute, the challenger must establish, beyond a reasonable doubt, that there are no possible applications or interpretations of the statute which would be constitutional. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *State v. Carpenter*, 197 Wis. 2d 252, 263, 541 N.W.2d 105, 109 (1995).

If the defendant stands mute or claims to be incompetent, the defendant shall be found incompetent unless the state proves by the greater weight of the credible evidence that the defendant is competent. If the defendant claims to be competent, the defendant shall be found competent unless the state proves by evidence that is clear and convincing that the defendant is incompetent.

690

■
Wanta's equal protection challenge requires him to show that those similarly situated are treated differently. *State v. Post*, 197 Wis. 2d 279, 318, 541 N.W.2d 115, 128–29 (1995). Generally, the Equal Protection Clause of the United States Constitution[3] prohibits discrimination based on certain invidious classifications, but it does not, in and of itself, create substantive rights. *Lutz v. City of York*, 899 F.2d 255, 265 (3rd Cir. 1990). The classification Wanta sets out is not a suspect classification, such as one based on race, but rather, it is one which he contends disfavors defendants in competency proceedings who maintain they are competent, as compared with defendants in competency proceedings who do not.

■
Wanta also contends that a defendant in a criminal trial has a fundamental right not to be tried when incompetent. We agree. Under *Cooper* and state statutes, a defendant cannot be tried unless he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.' " *Cooper*, 517 U.S. at 354 (citations omitted); § 971.13(1), STATS.[4] While the pro-

---

[3] The Wisconsin Supreme Court has applied the same interpretation to the Equal Protection Clause found in Article I, § 1 of the Wisconsin Constitution as that given to the federal constitutional provision. *State v. Post*, 197 Wis. 2d 279, 318 n.21, 541 N.W.2d 115, 128 n.21 (1995).

[4] Section 971.13(1), STATS., states: "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

691

hibition against trying an incompetent defendant is deeply rooted in our common law heritage, making competence to stand trial in a criminal proceeding a fundamental right requiring due process protections, it is not the only fundamental right at issue in a competency proceeding. A defendant who is adjudicated incompetent to stand trial may be deprived of his liberty.[5] A deprivation of liberty for any purpose impinges on a fundamental right. *Post*, 197 Wis. 2d at 302, 541 N.W.2d at 122 (citations omitted); *Addington v. Texas*, 441 U.S. 418, 425 (1979).

When a defendant in a competency proceeding asserts his fundamental right to liberty, the trial is to the court and the State has the burden of proving incompetency by clear and convincing evidence before it can deprive a defendant of his liberty. Section 971.14(4)(b), STATS. By comparison, in a civil commitment proceeding, one has the right to a jury trial and the petitioner bears the burden of proving by clear and convincing evidence all the elements necessary to commitment. Sections 51.20(11) and 51.20(13)(e), STATS. It is no accident that the burden of proof required to deny one's liberty is the same. The legislative history surrounding Wisconsin's competency statute shows that in drafting § 971.14(4)(b), the legislature recognized and attempted to protect two competing fundamental rights of a defendant, which are both at risk when a defendant's competency is called into question during a

---

[5] A defendant who is found incompetent may be involuntarily committed, while he receives treatment and an assessment is made as to whether his competency can be restored. Section 971.14(5), STATS. This is precisely what happened to Wanta. And after twelve months, if a defendant's competency has not been restored, he may be subjected to a civil commitment proceeding. Section 971.14(6)(b).

criminal proceeding: (1) the fundamental right not to be prosecuted when incompetent; and (2) the fundamental right not to be deprived of liberty without due process of law. Judicial Council Committee Note, 1987 A.B. 71.[6] Therefore, although we examine § 971.14(4)(b) under the strict scrutiny standard Wanta requests, we do so with consideration for both fundamental rights. *See Doering v. WEA Ins. Group*, 193 Wis. 2d 118, 130, 532 N.W.2d 432, 436 (1995); *see also Post*, 197 Wis. 2d at 319, 541 N.W.2d at 129.

There is no fundamental right to specify the exact procedures which a State must use during a competency proceeding. *Cooper*, 517 U.S. at 355. Therefore, it is within a State's purview to establish the specific procedures to be used, so long as they are "sufficiently protective" of the right not to be criminally tried while incompetent. *Id.* at 367–68. One such procedure is the allocation of the burden of proof. *Id.* For example, a State may presume that a defendant is competent and require him to prove incompetence by a preponderance of the evidence. *Medina v. California*, 505 U.S. 437, 449 (1992). In *Cooper*, the Supreme Court held that a State may not require a defendant who claims he is incompetent to prove his incompetency by clear and convincing evidence because to do so would permit a State to "proceed with a criminal trial after the defendant has demonstrated that he is more likely than not incompetent." *Cooper*, 517 U.S. at 355.

---

[6] "When the defendant claims to be competent, the state should establish incompetency by clear and convincing evidence because the determination affects the defendant's liberty interests." Judicial Council Committee Note, 1987 A.B. 71 (citing § 51.20(13)(e), STATS., and *Addington v. Texas*, 441 U.S. 418 (1979)).

As a procedural device, the function of the burden of proof is to:

> 'instruct the factfinder concerning the degree of confidence our society thinks [it] should have in the correctness of factual conclusions for a particular type of adjudication.' . . . The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington*, 441 U.S. at 423 (quoting *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)). Like the statutes at issue in *Medina* and *Cooper*, the Wisconsin competency statute regulates procedural burdens.

██

If a defendant maintains he is incompetent or stands mute, the State bears the burden of proving competency by the greater weight of the evidence, and if a defendant maintains he is competent, the State bears the burden of proving he is incompetent by clear and convincing evidence. We note that if the State were to have the burden of proving a defendant incompetent by only the greater weight of the evidence, when he chooses to assert his fundamental right to liberty, the risk of depriving a competent defendant of his fundamental right to liberty would be increased. *Addington*, 441 U.S. at 423. Therefore, for the class of defendants who are competent and assert their fundamental right to liberty, the burden established by § 971.14(4)(b), STATS., is clearly constitutional.

Wanta would have us ignore the fundamental rights of this class of defendants because he contends the burden of proof which was established specifically to protect their fundamental rights unduly increases the risk that an incompetent defendant who claims to

be competent will be subject to criminal prosecution. However, his argument ignores all of the other protections § 971.14(4)(b), STATS., provides to an incompetent defendant, such as: (1) the presumption of incompetence if a defendant either stands mute or asserts his incompetence; (2) the placement of the burden of proof on the State; and (3) the favorable burden of proof for that class of defendants. He also contends that in *Cooper*, the court rejected the argument that the heightened burden of proof was necessary to avoid the injustice of involuntary commitment after a finding of incompetency to stand trial. However, in *Cooper* the court did not weigh the fundamental right to liberty of one who asserts that right against the fundamental right not to be tried while incompetent, although it did cite, with approval, Wisconsin's allocation of the burden of proof to the State. *Cooper*, 517 U.S. at 362 n.18. Therefore, *Cooper* is not dispositive of the constitutional issues Wanta raises.

Notwithstanding *Cooper*, we acknowledge the tension within the statute that Wanta identifies. However, the clear and convincing burden of proof set out in § 971.14(4)(b), STATS., cannot be examined in isolation. Rather, it is part of a statutory scheme addressing the competency of defendants in criminal prosecutions. The statute is narrowly tailored to achieve the State's interest in prosecuting competent criminal defendants and in restoring the competency of those who are incompetent as soon as practicable, while being sufficiently protective of a defendant's fundamental right to liberty, when he asserts his competency and an incompetent defendant's fundamental right not to be tried while incompetent. *See Post*, 197 Wis. 2d at 302, 541 N.W.2d at 122; *see also*

*State ex rel. Matalik v. Schubert*, 57 Wis. 2d 315, 324, 204 N.W.2d 13, 17 (1973). Therefore, we conclude that Wanta has not met his burden to prove beyond a reasonable doubt that § 971.14(4)(b), violates either equal protection or due process.

## Sufficiency of the Evidence.

Wanta contends that the evidence was not sufficient to prove that he: (1) made false statements on his tax returns, and (2) concealed property to evade levy for taxes due.

### 1. False statements on tax returns.

To support a charge of filing false income tax returns in violation of § 71.83(2)(b)1., STATS., the State had to prove that Wanta intended to report zero income on his tax returns and that Wanta had income in 1988 and 1989, thereby making the statements on his tax returns false.

Wanta claims that the blank spaces and dashes on the lines for "Federal adjusted gross income" on his 1988 and 1989 tax returns were unresponsive answers on their face, but were untrue only by negative implication; and therefore, they were not intentionally false statements. In support of this argument, Wanta cites *United States v. Reynolds*, 919 F.2d 435 (7th Cir. 1990), and *United States v. Borman*, 992 F.2d 124 (7th Cir. 1993). His reliance on those cases is misplaced. In *Reynolds*, the defendant filed form 1040EZ and in *Borman*, the defendant filed form 1040A. In each case, the court concluded that the statements on the forms were not false because the forms did not require disclosure of the types of income that the defendants failed to disclose. Therefore, the charges of filing false income tax

returns were not warranted. *Reynolds*, 919 F.2d at 437; *Borman*, 992 F.2d at 126. Because the defendants filed the wrong forms thereby concealing certain taxable income, the government could have filed charges of tax evasion or failure to supply information required by law. *Reynolds*, 919 F.2d at 437. However, unlike the returns that the defendants filed in *Reynolds* and *Borman*, the tax returns that Wanta filed required disclosure of all income; therefore, his representation that he had no income was false, in violation of § 71.83(2)(b)1., STATS.

Furthermore, the jury could reasonably infer that Wanta had reported zero income on his 1988 and 1989 tax returns. Wanta attached federal form 4868 to the 1988 state form, and Wanta had typed a "0" on the line for "Total tax liability for 1988" on the federal form. Wanta and his wife signed both the state and federal forms indicating that the form and all attachments were "true, correct and complete." Wanta also stated his intentions on several occasions. When Ullman interviewed Wanta in June 1991 about his failure to report any income for 1988 and 1989, Wanta told Ullman that the entries on his tax forms indicated that he had no income for those years. At trial, Wanta admitted the statements he made to Ullman.

■

Wanta also contends that the State did not prove that he received any income for 1989 because the State did not present sufficient evidence to show that the sum of his expenses and disbursements exceeded his reported income for the year. However, contrary to Wanta's assertion, the State did not use a "cash expenditure" method to prove his income in 1989. Instead, the State used a much simpler "specific items" method, whereby Ullman presented evidence that various

amounts of money were paid either to Wanta or on his behalf from the New Republic bank account in 1989. Based on this evidence, the jury could have reasonably concluded that Wanta received income in 1989 and that he failed to report that income on his 1989 state income tax return.

### 2. Concealed property.

The State established that Wanta knew DOR was attempting to find assets against which to levy and that Wanta attempted to conceal such assets from DOR. Tax agent Dennis Wogsland testified that in 1988 he called Wanta and also stopped at his house to discuss payment of Wanta's delinquent taxes. At that time, Wogsland determined that he could not seize Wanta's truck because the truck was registered in the name of his son.

Shortly after Wogsland's visit, Wanta began to make purchases in the name of New Republic. In December 1988, Wanta purchased bedroom furniture from Big Sur waterbeds, with a New Republic check and an invoice made out to New Republic. The State presented evidence and argued that the Big Sur sales clerk must have been specifically instructed to show New Republic as the purchaser because the check that Wanta used to pay for the furniture did not include New Republic's address and the invoice did. Therefore, argued the State, the clerk could not have simply copied New Republic's address from the check. And, in January 1989, Wanta purchased the pick-up truck from his son using a corporate check. The title and registration were placed in the name of New Republic. Based on this evidence, the jury could reasonably infer that Wanta knew DOR was searching for leviable

assets and that he intended to conceal his ownership interest by using New Republic as purchaser and owner of the property.

**Venue.**

Wanta argues that the State did not establish facts sufficient to warrant venue in Dane County on the charges of concealing property to avoid levy because it failed to present evidence that any of the property at issue was ever located in Dane County. Wanta claims that he raised this issue on his own motion before the circuit court while he was represented by counsel. While a defendant has a constitutional right to be represented at trial, he has no constitutional right to concurrent self-representation and representation by counsel. *Moore v. State*, 83 Wis. 2d 285, 297–302, 265 N.W.2d 540, 544–47 (1978); *see also State v. Debra A.E.*, 188 Wis. 2d 111, 138, 523 N.W.2d 727, 737 (1994). Therefore, the circuit court did not erroneously exercise its discretion by deciding not to consider Wanta's *pro se* objection because he was represented in the proceedings by counsel. *See Moore*, 83 Wis. 2d at 301–02, 265 N.W.2d at 546–47. However, Wanta could have brought his concerns about venue and the charges brought pursuant to § 71.83(2)(b)3., STATS., to the attention of circuit court through counsel. Because he did not do so, he has waived the appeal of this issue. *See Dolan v. State*, 48 Wis. 2d 696, 703, 180 N.W.2d 623, 626 (1970).

**Jury Instructions.**

At the circuit court's jury instruction conference, Wanta failed to request jury instructions beyond those submitted by the State and the court. Additionally, he did not object to the State's proposed instructions. Therefore, we conclude Wanta has waived the appeal of this issue. *State v. Schumacher*, 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988).

**Ineffective Assistance of Counsel.**

The right to effective assistance of counsel stems from the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution, which guarantee a criminal defendant a fair trial. *See Strickland*, 466 U.S. at 684–86; *State v. Sanchez*, 201 Wis. 2d 219, 227–28, 548 N.W.2d 69, 72–73 (1996). The test for ineffective assistance of counsel has two prongs: (1) a demonstration that counsel's performance was deficient, and (2) a demonstration that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. A defendant has the burden of proof on both components of the test. *Id.* at 688.

To prove deficient performance, a defendant must establish that his or her counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. (Edward) Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 847 (1990) (citing *Strickland*, 466 U.S. at 687). A defendant must also overcome a strong presumption that his or her counsel acted reasonably within professional norms. *Id.* To satisfy the prejudice

prong, a defendant usually must show that counsel's errors were serious enough to render the resulting conviction unreliable. *Strickland*, 466 U.S. at 687.

Wanta argues that Chavez was ineffective in: (1) failing to present a defense; (2) failing to renew the competency issue; and (3) failing to renew his motion to withdraw. Contrary to Wanta's assertion, this case does not present complex tax issues. Rather, it addresses factual issues such as whether Wanta intentionally evaded paying his taxes. In regard to the issue of intent, and based on Wanta's testimony that he did not think he had any taxable income, Chavez argued that Wanta did not intentionally file a false return under § 71.83(2)(b)1., STATS. Additionally, Chavez explained that he did not present the defenses that no taxes were due because Wanta was not a Wisconsin resident and because the money he spent was obtained from loans, as those defenses were not supported by credible evidence. This was a strategic decision, not ineffective assistance, as Wanta suggests. *Cf. State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983) (defense counsel ineffective for failing to consider the defense of manslaughter in a homicide case because he was unaware of the law).

Additionally, Chavez was not ineffective in failing to revisit the competency issue after the circuit court found Wanta competent to stand trial in February 1995. The record reveals no new evidence concerning Wanta's competence between February and the trial. Therefore, Chavez had no reason to doubt the most recent competency determination and absent reasonable doubt, he was not required to again raise the issue of Wanta's competency. *See (Oliver) Johnson*, 133 Wis. 2d at 219–20, 395 N.W.2d at 182. Finally, Chavez was not ineffective in failing to renew his motion to with-

draw. If substitute counsel became available, the court said it would reconsider its decision; however, the record does not reflect that substitute counsel was ever available in a timely fashion that would have obviated the need for further delays.

Given the limits Chavez described as having been placed on him due to Wanta's proposed defense, inconsistent testimony, and failure to cooperate in developing credible evidence, Chavez demonstrated representation was reasonable and within professional norms. He adequately developed the most prudent defenses and did not continue to raise previously denied motions when circumstances underlying the denials had not changed. Therefore, his performance was not defective.

**Substitution of Counsel.**

The Sixth Amendment guarantee of assistance of counsel includes a qualified right to representation by counsel of the accused's choice. *State v. Miller*, 160 Wis. 2d 646, 652, 467 N.W.2d 118, 119 (1991). Wanta contends that he was unconstitutionally denied his choice of counsel when the circuit court denied Chavez's June 22, 1994 motion to withdraw, Chavez's May 2, 1995 motion to withdraw, and Epstein's May 2, 1995 motion for substitution and adjournment. In evaluating whether the circuit court properly denied these motions for withdrawal and substitution of counsel, we address three considerations: (1) the adequacy of the court's inquiry into a defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between a defendant and his attorney was so great that it likely resulted in a total lack of communi-

cation that prevented an adequate defense and frustrated a fair presentation of the case. *State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89, 90 (1988).

With regard to the first consideration, there may be instances in which a court may make a decision without a full inquiry into a defendant's reasons for requesting a change of counsel. *Id.* at 361, 432 N.W.2d at 91. If a defendant repeatedly makes such requests without presenting evidence of the attorney's incompetency or of conflict, the circuit court may summarily conclude, without a full inquiry, that the request is merely a ploy to disrupt the trial process. *Id.* With regard to the third consideration, to warrant substitution of appointed counsel, a defendant must show good cause, such as conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict. *State v. Robinson*, 145 Wis. 2d 273, 279, 426 N.W.2d 606, 609 (1988). Mere disagreement over trial strategy does not constitute good cause to require the court to permit an appointed attorney to withdraw. *Id.* at 278, 426 N.W.2d at 609. In addition, the right to counsel cannot be manipulated in order to obstruct the processing of a case by the courts or to interfere with the administration of justice. *State v. Clifton*, 150 Wis. 2d 673, 684, 443 N.W.2d 26, 30 (Ct. App. 1989).

When deciding whether to grant or deny a request for substitution with the associated request for continuance, the circuit court must balance a defendant's constitutional right to counsel of choice against the societal interest in prompt and efficient administration of justice. *Lomax*, 146 Wis. 2d at 360, 432 N.W.2d at 91. Several factors assist in balancing the relevant interests: the length of delay requested; whether there is competent counsel presently available to try the case;

whether other continuances have been requested and received by the defendant; the convenience or inconvenience to the parties, witnesses and the court; whether the delay seems to be for legitimate reasons or whether its purpose is dilatory. *Id.*

In denying Chavez's June 1994 request to withdraw as counsel, the court considered Chavez's stated reasons, as well as Wanta's claim to have private counsel, even though none appeared at the hearing. The court also considered the fact that Chavez was available and prepared to try the case. Therefore, the court's conclusion that under the circumstances it would consider a motion for withdrawal and substitution only if the Public Defender's office found new counsel for Wanta was not clearly erroneous.

In May 1995, Chavez again moved to withdraw, alleging the same conflicts as those in his earlier motion, and Attorney Epstein moved to be substituted, conditioned upon adjournment of trial. The court denied both motions, noting the history of delay in the case, the nonmandatory nature of the request for withdrawal, Wanta's prior, unfounded claims that he had secured alternative counsel, and the proximity to trial. Based on the history of the case and the fact that Wanta's position was adequately addressed by his affidavit attached to the motion to adjourn and by Epstein's comments at the hearing, the court properly exercised its discretion when it denied the motions for withdrawal and substitution.

**Restitution.**

The validity and reasonableness of restitution is measured by how well it serves to effectuate the State's

objectives. *Monosso*, 103 Wis. 2d at 378, 308 N.W.2d at 896. Such objectives include rehabilitation, protection of the public, and making the victim whole. *Id.*; *State v. Heyn*, 155 Wis. 2d 621, 629, 456 N.W.2d 157, 160 (1990). With regard to delinquent taxes, a person found guilty of tax evasion may be assessed a penalty in an amount equal to 100% of the entire underpayment. Section 71.83(1)(b)1., STATS. Payments made by a defendant, as restitution or otherwise, are first applied to penalties. Section 71.74(15), STATS.

Based on the applicable statutes and principles underlying restitution, the court properly applied Wanta's $14,129 payment to the civil fraud penalty. DOR was authorized to assess such a penalty under § 71.83(1)(b)1., STATS., and it properly applied the payment to the penalty instead of the principal amount of the tax, pursuant to § 71.74(15), STATS. In addition, the assessment of a penalty, although not necessary to make a victim whole, furthers the objectives of rehabilitation and protection of the public by forcing a defendant to take responsibility for his actions. Therefore, the circuit court did not err when it ordered restitution of $14,128.10, the amount still owed after subtracting the $14,129 payment made by Wanta.

## CONCLUSION

For the forgoing reasons, we conclude that Wanta's convictions were based on constitutional statutes, credible evidence, proper performance of defense counsel and reasonable decisions of the circuit court.

*By the Court.*—Judgment and orders affirmed.