# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 8, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP211-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF316

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RONALD L. SHINGLETON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County: DALE L. ENGLISH, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Kornblum, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Ronald L. Shingleton appeals a judgment entered on jury verdicts convicting him of three counts of first-degree sexual assault of a child, *see* WIS. STAT. § 948.02(1), and one count of incest, *see* WIS. STAT. § 948.06(1) (2017-18).[1]   He also appeals an order denying his motion for resentencing.  Shingleton claims that he is entitled to a new trial because the trial court erroneously admitted part of a letter Shingleton wrote to his parents.  In the alternative, Shingleton claims he is entitled to resentencing because:  (1) the trial court erroneously denied his request to discharge his counsel; and (2) he was deprived of the constitutional right to counsel of his choice.  We affirm.

## BACKGROUND

¶2    Shingleton was tried for sexually assaulting his ten-year-old granddaughter, B.B.S.  Before the trial, Shingleton wrote a letter to his parents (B.B.S.'s great-grandparents), asking his parents to have his daughter (B.B.S.'s mother) write to the judge to ask for leniency.  The trial court allowed admission of the letter in redacted form.  It provided, as relevant:  "I need to be punished and I accept that.  I'm not putting [B.B.S.] thrue [sic] a trial."

¶3    Although Shingleton's letter suggested he might forego a trial, he ultimately went to trial, where several witnesses testified.  B.B.S. told the jury that Shingleton would "punish" her by touching her private parts, having her touch his private parts, and putting his private parts into her private parts.  Shingleton's father read the redacted letter.  Finally, Shingleton testified and denied that he sexually assaulted B.B.S.  The jury found Shingleton guilty on all counts.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4    Two days before sentencing, Shingleton completed an inmate request/communication form indicating that he wanted to discharge his counsel. On the form, he wrote that his counsel "ha[d] not come back to see" him about his presentence investigation report (PSI). Shingleton continued: "[T]herefore I feel she is not representing me. I should be able to read the PSI so I have no alternative but to fire her. She will not defend me any longer." The trial court indicated it would provide copies of the PSI to Shingleton's counsel and the prosecutor.

¶5    At the beginning of the sentencing hearing, Shingleton told the court that counsel had not gone over "all of the paperwork" with him and had not let him read the PSI. Shingleton's counsel stated that when she received Shingleton's message that he did not understand their review of the PSI, she went to see him. Counsel told the court that she read the relevant parts of the PSI to Shingleton and he made "numerous" corrections to it. Counsel said she believed Shingleton "clearly understood" the PSI. Shingleton responded that he "understood."

¶6    The trial court proceeded by asking if Shingleton had any corrections to the PSI. Before his counsel could respond, Shingleton pointed out that he had asked that his counsel be discharged: "[S]he didn't do her job the first time. Why is she representing me now? I've already indicated I want her fired. I didn't want her representing me." The trial court acknowledged Shingleton's request, but concluded, "[w]e're going to finish this today."

¶7    The trial court then asked Shingleton's counsel to point out any inaccuracies in the PSI. Shingleton's counsel made many corrections. The trial court accepted the proposed changes and turned to sentencing, where it heard statements from B.B.S. and her family. When it was time for Shingleton's counsel

to make a sentencing argument, counsel told the trial court Shingleton did not want one. Shingleton confirmed his request, telling the trial court "I didn't understand what the need for it was …. [T]here's no excuse for what I've been convicted of. I took advantage of my granddaughter. I can't change what I've done … I know I'm guilty … and I deserve everything." The trial court sentenced Shingleton to a total of 120 years in prison, with 90 years of initial confinement and 30 years of extended supervision.

¶8      Shingleton filed a motion for resentencing, arguing that: (1) the trial court erroneously denied his request to discharge his counsel; and (2) he was denied his constitutional right to counsel of his choice. The trial court held a hearing and denied Shingleton's motion.

## DISCUSSION

I.      *Evidentiary Ruling*

¶9      Shingleton alleges that the trial court erred when it admitted the statement in his letter that he did not want to put B.B.S. through a trial. A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has a reasonable basis and was made in accordance with accepted legal standards and facts of record. ***State v. Pharr***, 115 Wis. 2d 334, 342, 340 N.W.2d 498 (1983). In determining whether to admit evidence, the trial court considers, as material here, whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." WIS. STAT. § 904.03.

¶10     In this case, the trial court considered whether to admit the redacted version of the letter on both the first and second days of the trial. It concluded that

Shingleton's statement that he was not going to put B.B.S. through a trial was relevant to show consciousness of guilt. The trial court opined that the statement was admissible because, "I don't think one could draw the inference that he's being punished solely because he wants to have a trial. He has a right to have a trial. So that's going to stay in." It concluded that the probative value of the statement was high and that "if there is any prejudice to it, I think it does not substantially outweigh the high probative value."

¶11    Shingleton argues that the trial court erroneously exercised its discretion in weighing the probative value against the danger of unfair prejudice. His argument has two parts. First, Shingleton claims that the court put too much weight on the probative value of the evidence. He acknowledges that the statement he did not want to put B.B.S though a trial "constituted some evidence of consciousness of guilt," but points to *Miller v. United States*, 320 F.2d 767 (D.C. Cir. 1963), to argue consciousness of guilt may exist in a person without actual guilt.

¶12    Shingleton's argument misconstrues *Miller*. *Miller* did not hold that evidence showing consciousness of guilt is inadmissible or has low probative value. Indeed, *Miller* made clear "[i]t is not suggest[ing] that guilt[y] feelings may not reflect actual guilt, but only that they do not always reflect it." *Id.* at 773. Accordingly, it does not follow that Shingleton's statement he did not want to put B.B.S. through a trial has low probative value simply because an innocent person may sometimes act guilty. *See id.*; *see also* *State v. Selders*, 163 Wis. 2d 607, 620-21, 472 N.W.2d 526 (Ct. App. 1991) (whether evidence shows consciousness of guilt is for the jury to determine).

¶13     Second, Shingleton contends that the trial court should have given more weight to the danger of unfair prejudice. He claims that "there was a real danger that after hearing evidence that [he] had initially stated not [to] put B.B.S. through a trial, the jury would penalize [him] for doing just that." We disagree.

¶14     The trial court performed the proper balancing test and determined that the statement was not unduly prejudicial. As we have seen, Shingleton's statement was probative of Shingleton's consciousness of guilt. To the extent Shingleton's statement was prejudicial, it was not unfairly so, particularly in the context of the letter in which Shingleton admitted "I need to be punished and I accept that." *See* **State v. Gray**, 225 Wis. 2d 39, 64, 590 N.W.2d 918 (1999) (inquiry is not whether the evidence is prejudicial, but whether it is unfairly prejudicial). The admission of Shingleton's statement was a proper exercise of the trial court's discretion.

II.     *Request to Discharge Counsel*

¶15     Shingleton also claims that the trial court erroneously denied his request to discharge his counsel. "Whether trial counsel should be relieved and a new attorney appointed is a matter within the trial court's discretion." **State v. Jones**, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378. We will uphold a discretionary decision if the trial court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion a reasonable judge could reach. **Id.**

¶16     We consider the following factors to determine whether the trial court properly exercised its discretion in deciding a request for new counsel:

> (1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether

6

the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.

*State v. Lomax*, 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988).

¶17 Here, the trial court conducted a retrospective hearing at which it reviewed the sentencing transcript and addressed the *Lomax* factors. Regarding the first factor, the court noted that Shingleton's only complaint was that his counsel did not go over the PSI with him thoroughly enough. The court noted that Shingleton did not at any point during the sentencing hearing ask that a new attorney be appointed. The trial court found that Shingleton admitted that he understood the information in the PSI and made more corrections than it had seen in any other case. The court stated that it was satisfied that counsel "thoroughly went over the PSI with the defendant," and as a result, "he pointed out and had [his counsel] bring to the Court's attention numerous corrections, all of which the Court accepted as being true." The court concluded that it was satisfied with the inquiry it made into Shingleton's request to discharge his counsel.

¶18 The trial court then addressed the timeliness factor, noting that Shingleton's request was made only two days before sentencing and that granting Shingleton's request would have delayed sentencing potentially by months. It took judicial notice of the fact that it is difficult for the public defender's office to find attorneys to represent indigent clients, particularly in child sexual assault cases. The trial court concluded that any further delay would have adversely impacted the family, noting that B.B.S. was in an institution after having tried to kill herself.

¶19    Finally, the trial court turned to the third factor and found that the record belied Shingleton's argument that his counsel's failure to make a sentencing argument on his behalf presented a conflict that was so great it likely resulted in a total lack of communication.  It noted that Shingleton did not say during the sentencing hearing that he did not want counsel to make a sentencing argument because of a fractured relationship.  Rather, the court noted that Shingleton did not want a sentencing argument because he finally accepted responsibility for his crimes.  The trial court therefore concluded that there was no merit to Shingleton's motion for resentencing.

¶20    Shingleton challenges the trial court's analysis of all three ***Lomax*** factors.  We address each one in turn.  First, Shingleton claims that the trial court's inquiry at the sentencing hearing was inadequate because, other than addressing the PSI, the trial court made no inquiry into his request to discharge counsel.  While trial court recognized at the hearing that it could have more fully developed Shingleton's request to discharge his counsel, a court may cure an insufficient inquiry through a retrospective determination of the appropriateness of the request. *See **Lomax***, 146 Wis. 2d at 363.  The trial court did that here.

¶21    At the retrospective hearing, the trial court found that Shingleton's only complaint was that he wanted to discharge his counsel because counsel did not go over the PSI with him as thoroughly as he wanted.  The record of the sentencing hearing shows the trial court addressed this concern.  At the sentencing hearing, Shingleton's counsel told the court that after she learned of Shingleton's complaint in the request/communication form, she went over the relevant parts of the PSI with Shingleton and believed that he clearly understood it.  Shingleton acknowledged that he understood the PSI and his lawyer set forth an extensive list of items to be corrected.  On appeal, Shingleton does not point to any evidence

that he presented additional reasons for wanting to discharge his counsel either during sentencing or in his postconviction motion. Indeed, he had every opportunity to do so at the retrospective hearing. He did not. Accordingly, we conclude the trial court's inquiry was adequate to inform the court of the nature of Shingleton's complaint.

¶22 Second, Shingleton alleges that his request to discharge counsel two days before sentencing was timely because "[s]uch time frame provided sufficient opportunity for the trial court to, prior to sentencing, conduct an inquiry as to the status of counsel." Although the date of the request is a relevant factor, it is not the sole consideration in determining the timeliness of the motion. *See id.* at 361-62. A court may also take into account the following: (1) the length of the delay; (2) whether competent counsel is available to try the case; (3) whether prior continuances were requested and received by the defendant; (4) the inconvenience to the parties, witnesses, and the court; (5) whether the delay seems to be for legitimate reasons as opposed to some dilatory purpose; and (6) other relevant factors. *See **Phifer v. State***, 64 Wis. 2d 24, 31, 218 N.W.2d 354 (1974); *see also **Lomax***, 146 Wis. 2d at 360.

¶23 The trial court considered the appropriate factors in determining Shingleton's request to discharge his counsel was not timely, noting that the analysis depended on the circumstances. At the retrospective hearing, the court made clear that it considered the length of the delay, the difficulty in finding appointed counsel to represent defendants in child sexual assault cases, and the significant impact any delay would have on the victim and her family. Moreover, we note that the timeliness factor is by itself not dispositive. *See **Jones***, 326 Wis. 2d 380, ¶32. In this case, the third factor concerning the alleged conflict between Shingleton and his counsel carries significant weight.

9

¶24    Turning to the third factor, Shingleton argues that a substantial breakdown in communication is evidenced by the fact that his counsel did not make a sentencing argument on his behalf.  Shingleton acknowledges that he told the sentencing court he did not want his counsel to make a sentencing argument, but claims that this request shows he lost confidence in his counsel's ability to represent him.  Again, Shingleton did not raise this argument at any time during the sentencing hearing or in his motion for resentencing.  His sole claim is that he was unhappy with his counsel's review of the PSI.  This complaint by itself is insufficient to show that there was a conflict that prevented Shingleton's counsel from communicating with Shingleton or advancing his interests.  *See, e.g., State v. Wanta*, 224 Wis. 2d 679, 703, 592 N.W.2d 645 (Ct. App. 1999) (not every disagreement results in an irreconcilable conflict).  As we have seen, Shingleton admitted that he reviewed the PSI with counsel and that he understood it.  Accordingly, we conclude that the trial court properly exercised its discretion in denying Shingleton's motion for resentencing.

III.    *Sixth Amendment Right to Counsel*

¶25    Finally, Shingleton contends that the trial court violated his Sixth Amendment right to counsel of his choice at the sentencing hearing.  Shingleton relies on *State v. Boyd*, 2011 WI App 25, ¶8, 331 Wis. 2d 697, 797 N.W.2d 546, to argue that the Sixth Amendment provides the right to a lawyer with whom he can communicate effectively.  He thus appears to claim that his right to counsel was violated because his lawyer did not make a sentencing argument on his behalf.  This argument is simply a repackaging of his contention that the trial court erroneously denied his right to discharge counsel.  *Boyd* utilizes the *Lomax* factors to analyze whether a defendant was entitled to new counsel based on an alleged breakdown in communication.  *Boyd*, 2011 WI App 25, ¶¶8-16.  As we have seen

10

above, Shingleton has not shown that he could not effectively communicate with his counsel. Accordingly, we will not address this claim further.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2019-20).