STATE of Wisconsin, Plaintiff-Respondent,

v.

Dwight Glen JONES,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP2342–CR. Oral argument April 12, 2010.
—Decided July 8 2010.*

2010 WI 72

(Also reported in — N.W.2d —.)

 

For the defendant-appellant-petitioner there were briefs and oral argument by *Ellen Henak,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished opinion of the court of appeals affirming a judgment and order of the circuit court for Milwaukee County. Dwight Glen Jones appeals from his judgment of conviction and an order denying his post-conviction motion seeking a new trial. He seeks a new trial on the grounds that the circuit court erred when it denied his request to substitute counsel. He contends that the denial was error because the circuit court should have given more weight to the timeliness of his request—made more than three months before trial—and should have balanced that with the conflict he had with trial counsel. He claims that the dispute related partly to his severe hearing impairment. He also argues that the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution give him the right to reject his appointed counsel and, because substitute counsel was available through the Office of the State Public Defender (SPD), to have a second attorney appointed. His basis for the constitutional claim is that the United States Supreme Court and this court have both upheld, though on slightly different constitutional grounds,[1] a defendant's right to

---

[1] In *United States v. Gonzalez-Lopez,* 548 U.S. 140, 146 (2006), the United States Supreme Court discusses "the Sixth

retained counsel of choice; he contends that such a right should be applied to indigent defendants to the extent possible and would require a court to grant his request for substitution of counsel.

¶ 2. The issues we address are first, whether Jones is entitled to a new trial on the grounds that the circuit court wrongly denied his request for substitution of counsel, and second, whether he is entitled to a new trial on the grounds that such a denial violates rights guaranteed by the Wisconsin Constitution and the Sixth Amendment to the United States Constitution.

¶ 3. We agree with the court of appeals that the circuit court, in denying Jones' motion for a new trial, considered the relevant factors, including Jones' stated reasons for wanting new counsel and his ability to read written English and to speech read,[2] and applied a proper standard of law as set forth in *State v. Lomax*.[3]

---

Amendment right to counsel of choice[] ... [which] commands ... that the accused be defended by the counsel he believes to be best." In *Mulkovich v. State,* 73 Wis. 2d 464, 474, 243 N.W.2d 198, (1976), this court stated that denial of "the right to be represented by counsel of one's own choosing" is a denial of due process. In both cases, the courts explicitly limited the right to defendants with retained rather than appointed counsel. *Gonzalez-Lopez,* 548 U.S. at 151, and *Mulkovich,* 73 Wis. 2d at 475.

[2] An education professor who testified on Jones' behalf at the retrospective evidentiary hearing stated that "speech reading" and "lip reading" refer to the same process; however, "speech reading" is currently the term preferred by professionals because it recognizes that reading visual communication cues involves more than just looking at a speaker's lips.

[3] *State v. Lomax,* 146 Wis. 2d 356, 432 N.W.2d 89 (1988) (setting forth factors for a court's consideration when it is deciding whether to grant a defendant's request for substitution of counsel and holding that a retrospective hearing to ascertain

Because the circuit court did so and reached a conclusion that a reasonable judge could reach, there was no erroneous exercise of discretion in denying his request for substitution of counsel, and therefore the order denying the post-conviction motion for a new trial was proper.[4]

¶ 4. We reject as well Jones' argument that indigent defendants with appointed counsel have a right, under the constitutions of Wisconsin and the United States, to reject appointed counsel in favor of substitute counsel. Jones has not cited any case where a court has so held, and we are unaware of any. Of course, nothing bars a defendant from requesting substitution of counsel, nothing bars the SPD from choosing to make substitute counsel available, and nothing bars a court from granting such a request. The question is whether a court is required by the Sixth Amendment to the United States Constitution or by Article I, Section 7 of the Wisconsin Constitution to do so solely because a defendant requests it. This court and the United States Supreme Court have held that it is not. As the Seventh Circuit Court of Appeals put it, the Sixth Amendment does not guarantee "a friendly and happy attorney-client relationship,"[5] but rather effective assistance of

---

whether a new trial is required is the appropriate remedy where it cannot be determined on the available record that the circuit court appropriately exercised its discretion in denying such a request).

[4] In order to avoid any confusion, we note that the Honorable Elsa C. Lamelas presided over pretrial and trial proceedings as well as a post-conviction motion seeking a new trial, which was denied without an evidentiary hearing. The Honorable Dennis P. Moroney presided over the proceedings after remand from the court of appeals for an evidentiary hearing.

[5] *United States v. Mutuc*, 349 F.3d 930, 934 (7th Cir. 2003).

counsel. Even if Jones was dissatisfied with the number of letters and visits from his counsel, and took offense at counsel's assessment of the strength of the case, it is evident from the record that counsel visited Jones, wrote him letters, conveyed plea offers, reviewed discovery with him and discussed with him during trial matters such as the defendant's decision about whether to testify. It is clear that the two communicated and that an adequate defense was presented. There was therefore no violation of Jones' right to counsel under the Sixth Amendment to the United States Constitution and under the Wisconsin Constitution, and the circuit court properly denied Jones' motion for a new trial on that basis.

¶ 5. Accordingly, we affirm the court of appeals decision affirming the denial of Jones' motion for a new trial.

## I. PROCEDURAL HISTORY

¶ 6. We begin by briefly setting forth the procedural history of this case. A jury found Jones guilty of seven charges related to car thefts and break-ins. Jones filed a post-conviction motion for a new trial, which the circuit court denied. Jones appealed his judgment of conviction and the denial of the post-conviction motion. The court of appeals reversed the circuit court's order denying the motion for a new trial and remanded for an evidentiary hearing on Jones' contentions. Following remand, the circuit court held a two-day evidentiary hearing and then denied the motion for a new trial. Jones again appealed the judgment of conviction and the denial of the post-conviction motion. The court of appeals affirmed both. Jones then petitioned this court for review, and we granted his petition.

## II. BACKGROUND

¶ 7. In early spring of 2005, there was a rash of break-ins and car thefts in a parking structure on Milwaukee's east side. One of the stolen vehicles was later located on a Milwaukee street, and officers conducting surveillance saw Jones walk up to the car, start it, and drive off in it. They followed him until he parked and got out of the car. Police observed that the car's steering column was peeled, so that it could be started without a key. Officers then approached Jones, who ran. They chased Jones for three blocks, found him under a porch, and arrested him. A security guard who had witnessed one of the break-ins identified Jones as the person who took the vehicle. Security camera footage of two of the thefts showed a man whom the security guard identified as Jones stealing a radio from a car on one occasion and stealing a car on another. Jones was charged in May 2005 with theft, criminal damage to property, obstruction, entry into a locked vehicle, operating after revocation, and operating a vehicle without the owner's consent. All counts were subject to the habitual criminality enhancer.

¶ 8. Jones was indigent, and the SPD appointed counsel to represent him. As the court of appeals noted,

> According to Jones, he has no hearing in his right ear, and he has twenty-five percent hearing in his left ear. He wears hearing aids that do not allow him to hear normally. He knows sign language, he can read lips, and he can speak aloud in English.

*State v. Jones (Jones II)*, No. 2008AP2432–CR, unpublished slip op., ¶ 4 (Wis. Ct. App. Aug. 4, 2009). Jones' hearing aids were broken on the day of his arrest and he did not have working hearing aids during the pendency of this case. Counsel appointed to represent Jones did not know sign language. It is not disputed that besides

387

appearing at status hearings where Jones was not present, counsel met with Jones on May 10, 2005, before the preliminary hearing; on August 19, 2005; on October 17, 2005; and on January 26, 2006. Counsel also sent Jones detailed letters on the status of the case on August 16, August 30, and October 13, 2005. At the preliminary hearing,[6] when the court was unable to procure an interpreter for Jones, the court gave Jones the choice of adjourning the hearing or proceeding with "real-time reporting," which allows the court reporter to transcribe the proceedings in such a way that the words appear on a screen as they are spoken. Jones' counsel informed the court,

> I did discuss both options with him. His desire is to proceed today. He indicates to me that he has attended the School for the Deaf in Delavan and completed a high school degree ... in the MPS program for the deaf, so—and he has no problem reading as long as he doesn't have to go too fast.

The preliminary hearing proceeded and Jones was bound over for trial. The trial was adjourned once to October 17, 2005, and then again to February 6, 2006; the adjournments were necessary because the interpreters were unavailable, and Jones did not request either adjournment.

¶ 9. While the case was pending, the circuit court received two letters from Jones complaining about his appointed counsel. The letters to the court, dated October 17, 2005, and October 30, 2005, asked that his appointed attorney be permitted to withdraw,[7] giving

---

[6] The preliminary hearing was held before Milwaukee County Court Commissioner Barry C. Slagle.

[7] Though Jones did not expressly state it in his letters to the court, he stated in a letter to counsel on September 26, 2005, that he was going to "write to Judge Lamelas asking her for a

the following reasons: the attorney was not acting in Jones' best interest, the attorney had not been truthful, the attorney had visited Jones only once during the six months he had been in custody, and some of Jones' letters to the attorney had not been answered.[8]

¶ 10. After receiving a motion to withdraw from Jones' counsel on October 26, 2005, the circuit court, Judge Elsa C. Lamelas presiding, held a motion hearing. Prior to the hearing, the record reflects that the court questioned how the interpreters, who were there to assist Jones by signing for him, would work in the hearing.[9] The circuit court then commented that Jones'

---

new attorney." There is no contention in this case, and no indication in the record, that Jones sought to proceed pro se.

[8] The October 17, 2005, letter from Jones said counsel had "never [responded] to any of them"; the October 30, 2005, letter from Jones said counsel had "only [responded] to me 2–time[s]." The record contains copies of letters from counsel to Jones dated August 16, August 30, and October 13, 2005; those letters detailed the plea offer, updated Jones on the trial date, and explained when counsel would come to meet with Jones. The October 13, 2005, letter from counsel explains that the Milwaukee Secure Detention Facility (MSDF) staff had cancelled the visit scheduled for September 7 and that another visit had been scheduled for October 17.

[9] There were two interpreters: a hearing interpreter who interpreted the spoken word into literal signed English, and a deaf interpreter who then interpreted the signed English into American Sign Language (ASL) for Jones. A publication of the National Consortium of Interpreter Education Centers explains the need in some circumstances for such a two-interpreter team:

> A significant portion of the deaf population is best served by the provision of a deaf-hearing interpreting team accommodation . . . [T]he deaf-hearing interpreting team consists of one deaf court interpreter and one court interpreter who can hear who work together in the transfer of meaning between . . . spoken English and American Sign Language ("ASL") . . . .

counsel had told the court "that at least in close proximity he's communicated with the defendant without any interpreter whatsoever." Jones asserted immediately, through signing, "I believe that we did struggle. I think I need an interpreter with my attorney." From the circuit court's response, the court apparently took the comment to mean, given the context of the discussion, that Jones was referring to having an interpreter with him and his attorney at the defense table. The court responded, "I'm not disputing that he may need an interpreter for court. I'm wondering if this additional step of the deaf interpreter is necessary." The hearing then proceeded with both interpreters, and Jones communicated with the court both directly and through the interpreter, with a combination of signing and speaking aloud. He told the court at one point, "I am functioning well, understanding through using the interpreters; but I will probably speak using my own voice."

> . . . [M]any court interpreters who can hear and sign are not fluent in ASL. Courts assume that because a court interpreter can sign, the court interpreter can also interpret in a manner that is understandable to the deaf litigant. However, many certified interpreters who can hear are not fluent in ASL, have insufficient exposure to legal settings and will not have the knowledge or the linguistic skill required to satisfy the oath to interpret the proceedings accurately. The deaf interpreter ensures that the court interpreter is able to achieve the level of accuracy required in legal settings.

Carla M. Mathers, Nat'l Consortium of Interpreter Educ. Ctrs., Deaf Interpreters in Court: An Accommodation That Is More Than Reasonable 6–7 (Mar, 2009). According to the publication, interpreting teams are beneficial for deaf people with additional communication needs such as those for whom English is a second language. *Id.* at 8–9. The record in this case indicates the interpreting team chose to err on the side of caution, because it had not been possible to determine in advance of the motion hearing what type of interpreting services Jones needed.

¶ 11. At the hearing, Jones' counsel detailed his work on the case so far, including his appearance at the preliminary hearing on May 10, a meeting on August 19, 2005 that lasted between four and five hours, during which Jones and counsel had reviewed discovery "exhaustively," and a one-and-a-half hour meeting on October 17, 2005. Jones' counsel noted that he had filed the motion to withdraw and had requested a quick hearing "because Mr. Jones did not want to impair his February 6th trial date by switching attorneys if the court grants that request."

¶ 12. When it was Jones' turn to speak, the circuit court asked him directly, "Why do you want another lawyer?" He responded with the following reasons: counsel was not looking out for Jones' "best interests"; counsel had met with Jones only one time in seven months; counsel never wrote letters back in response; Jones had "too many disagreements" with counsel; Jones did not "feel comfortable with him" and did not trust him; the four-hour meeting counsel had mentioned was not "a good meeting"; and finally Jones suspected that counsel was "working with the D.A."

¶ 13. The circuit court denied counsel's motion to withdraw on the grounds that the court "[had not] heard a reason to permit [counsel] to withdraw," and that there was no indication that Jones was being deprived of his Sixth Amendment rights.

¶ 14. Jones discussed his dissatisfaction with counsel with the court yet again at the beginning of trial: As the circuit court was reviewing the arrangements made for interpreters' services, the court asked counsel if he was "satisfied with this degree of interpretation." The attorney said that he was. The court then asked Jones if he was satisfied, and Jones answered that he was not. The court asked why not. Jones replied

that he did not "feel comfortable" with counsel, because counsel was trying to "force" him to accept the plea. After clarifying that the issue being addressed was the sufficiency of the sign language interpreters (with which Jones said he was satisfied), the court returned to the question of counsel. The court said, "All right. Now you're not happy with your lawyer; is that what you started to tell me?" Jones said, "Yes," and then added:

> I want to say more. . . . Your Honor, my lawyer is trying to force me to plead to something that I did not commit. He's telling me that I'm not going to win my trial, even if I appeal it I won't win that either. And I don't feel that's right. And, you know, I, I don't have no trust or confidence in him, you know. He supposed to be with me. And he also have a video that me and him haven't saw yet. And he has been my lawyer for ten months, and I still haven't seen the video with him because there are things I want to point out to him, but yet he haven't sit down and took time to show me the video. . . . And I just don't feel comfortable with him representing me for my trial, and I told him that. And I also told you that on November 30, 2005. And the same thing happened over, and over, and over. And he don't believe nothing I tell him. And I have been showing him the fact of my innocence. It seemed like I get nothing out of him because he don't believe nothing I say, and I don't want to plead to something I didn't commit. And that's all I want to say to the court.

¶ 15. The circuit court addressed Jones' complaint by making arrangements for Jones and counsel to review the video in question together during the lunch break before the jury was selected. (Jones had seen the video himself in a separate revocation proceeding in which he was represented by other counsel; counsel informed the court that he had also reviewed the videotape for several hours and had taken notes on it.) Jones also was, at that point, given a final opportunity to consider accepting the

plea offer. He reviewed the videotape with counsel and then, when the court reconvened in the afternoon, informed the court that he wished to go to trial. The trial proceeded, with Jones' theory of defense being mistaken identity and the prosecution's failure to prove its case beyond a reasonable doubt. At the close of the State's case, outside the presence of the jury, the court asked what Jones' wishes were in regard to testifying. Jones indicated on the record, when counsel asked if he wanted to discuss the matter before answering, "Yeah, I want to talk to you." Before the matter was settled, another question arose concerning how the interpreters would participate in the testimony if Jones took the stand. Again, Jones stated on the record, "I think I would like to discuss with my attorney before anything, then I will let them know." The circuit court noted for the record, "And the record should reflect that Mr. Jones always answers the questions in spoken English rather than through American Sign." Jones elected not to testify.

¶ 16. A jury returned verdicts of guilty on seven counts[10]; it returned a verdict of not guilty on one count of operating a motor vehicle without the owner's consent.

---

[10] The jury found Jones guilty of one count of operating a motor vehicle without the owner's consent, contrary to Wis. Stat. § 943.23(2); one count of theft of property with a value of less than $2,500, contrary to Wis. Stat. § 943.20(1)(a) & (3); one count of criminal damage to property with a value of less than $2,500, contrary to Wis. Stat. § 943.01(1); one count of entry into a locked vehicle, contrary to Wis. Stat. § 943.11; one count of operating after revocation, contrary to Wis. Stat. § 343.44(1)(b) & (2)(b); and two counts of obstructing or resisting an officer (count 6, obstructing an officer; and count 8, obstructing an officer, false information), contrary to Wis. Stat. § 946.412(1). All counts included the habitual criminal penalty enhancer pursuant to Wis. Stat. § 939.62.

¶ 17. Jones filed a post-conviction motion for a new trial on the grounds that the circuit court had wrongly denied his request to substitute counsel. The circuit court, without a hearing, denied the post-conviction motion in an order, noting, "Had Jones asserted a legitimate reason for new counsel, anything other than what was essentially a bald request for a substitution, I would have balanced these concerns, as well as the State's interest in proceeding to trial on what was already an old case, against whatever reason Jones had advanced."

¶ 18. Jones appealed the denial of his post-conviction motion to the court of appeals, claiming that "he was unable to effectively communicate with his trial lawyer because he, Jones, is severely hearing-impaired." *State v. Jones (Jones I)*, 2007 WI App 248, ¶ 1, 306 Wis. 2d 340, 742 N.W.2d 341. The court of appeals remanded for a retrospective evidentiary hearing in accordance with the procedure prescribed in *Lomax*. The court of appeals asked the circuit court on remand to allow Jones "to prove, by expert testimony if necessary, his contention that he had an irresolvable breakdown in communications with his trial lawyer." *Jones I*, 306 Wis. 2d 340, ¶ 19. The reasons given for the remand were 1) that contrary to the circuit court's assertion, Jones had asserted a need for an interpreter with his attorney; 2) that the circuit court had made unsupported assumptions that permitting substitution would require a delay and a new trial date, which would be costly and disruptive; 3) that the circuit court had assumed without first determining that it would not be possible to find a substitute lawyer who could be prepared in time for trial; and 4) that there was no basis for assuming that the State would be prejudiced by any delay, even if delay were necessary.

¶ 19. The Milwaukee County Circuit Court, the Honorable Dennis P. Moroney presiding, conducted the retrospective evidentiary hearing over the course of two days. The court of appeals subsequently described the testimony at that hearing:

> Several witnesses testified at the hearing after remand. Dr. Amy Otis-Wilbourn, a professor in the Department of Exceptional Education at the University of Wisconsin–Milwaukee, testified regarding her evaluation of Jones's ability to communicate using sign language, English, and speech reading.[2] Jones's trial counsel described communicating with Jones during attorney/client conferences without a sign language interpreter. Jones's mother testified that she does not know sign language and that she communicates with Jones using spoken English.
>
> Jones also testified. He asserted that he had difficulty understanding his trial counsel, and that he "couldn't trust [counsel] when [counsel] was talking . . . without an interpreter." Jones explained that none of his fifteen letters to trial counsel mentioned either an inability to understand his counsel or a need for an interpreter because his counsel promised to bring an interpreter to future meetings. Jones also explained that his letters to the trial court requesting new counsel did not mention the need for an interpreter because the court knew that Jones was deaf and "would know that [Jones] would have problems with this lawyer without an interpreter."

*Jones II,* ¶¶ 7–8.

¶ 20. After that hearing, the circuit court denied the motion for a new trial, saying that "[the trial court] asked three times what his reasoning was [for seeking substitute counsel], all of which were insufficient to indicate . . . why [the attorney] should have to be removed." The circuit court noted that the record was "devoid" of any indication that Jones' substitution re-

395

quest related to his deafness, and that the reasons given were "distrust, lack of coming to see him, lack of answering his questions, and then ultimately 'I think he's working with the D.A.'s office,' " referring to Jones' assertion that counsel was colluding with the prosecutor.

¶ 21. Jones again appealed the denial of the motion to the court of appeals, arguing that the circuit court had erred in concluding that he and his counsel could communicate effectively. Though it took issue with one statement in the circuit court's ruling,[11] the court of appeals reviewed the record and found that it supported the circuit court's decision. Specifically, it found support in the record for the conclusions that Jones communicated effectively with his attorney without a sign language interpreter, that Jones' letters did not include "complaints about a language barrier or state that Jones could not understand his lawyer," and that Jones' acknowledgment that he had previously pled guilty "more than eight times" discredited the expert's testimony that Jones had not understood such terms as "plea" and "incarceration." The court of appeals also rejected Jones' constitutional claim of a right to substitute counsel by noting that it was bound by precedent holding that indigent defendants are not entitled to counsel of choice.

¶ 22. Jones petitioned this court for review, which we granted.

---

[11] In its ruling following the retrospective hearing, the circuit court had stated that Jones had not expressed a need for a sign language interpreter with his attorney. The court of appeals said Jones had done so at one point and cited his statement to the trial court, saying, "I think I need an interpreter with my attorney." *Jones II,* ¶ 11.

## III. STANDARD OF REVIEW

¶ 23. Whether trial counsel should be relieved and a new attorney appointed is a matter within the circuit court's discretion. *State v. Lomax,* 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). Absent an erroneous exercise of discretion, the circuit court's judgment "will not be disturbed." *Anderson v. Onsager,* 155 Wis. 2d 504, 513, 455 N.W.2d 855 (1990). This court will sustain the circuit court's decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* at 514. This court independently reviews whether deprivation of a constitutional right has occurred. See *State v. Kramer,* 2009 WI 14, ¶ 16, 315 Wis. 2d 414, 759 N.W.2d 598; *State v. Harenda Enterprises,* 2008 WI 16, ¶ 28, 307 Wis. 2d 604, 746 N.W.2d 25.

## IV. ANALYSIS

### A.

¶ 24. We first consider whether the circuit court erroneously exercised its discretion when it denied Jones' request for substitution of counsel, and whether the post-conviction motion seeking a new trial should have been granted on that ground.

¶ 25. We review the circuit court's exercise of discretion using the factors test set forth in *Lomax* for reviewing a denial of a request to substitute counsel. There, this court stated, "When all of the defendant's complaints about counsel are known to the judge, judicial discretion may be exercised in application of the

factors . . . [I]f the defendant's reasons are sufficient, it is better that new counsel be appointed . . . The trial judge presiding over the evidentiary hearing will be informed of the specific reasons for the defendant's dissatisfaction with his counsel, and the court will be able to evaluate those reasons . . . ." *Id.* at 362. When reviewing the circuit court's decision, we stated in *Lomax,*

> A reviewing court must consider a number of factors including: (1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.

*Id.* at 359.

¶ 26. The parties agree that *Lomax* controls our review; they disagree about the test that *Lomax* prescribes and how it applies to the facts of this case. Jones contends that his lack of trust in counsel, and counsel's failure to respond to letters constituted difficulties in the attorney-client relationship that justify substitution of counsel under *Lomax.* This is so, he contends, because *Lomax* prescribes a balancing test. He cites the statement that "Timeliness must be balanced with the third consideration . . . ." Here, had the court correctly balanced the reasons given for wanting new counsel with the timeliness of the request, Jones contends, it would have been required to grant his request. Instead, he argues, the circuit court incorrectly treated as dispositive the fact that there was not a likelihood of "a total lack of communication that prevented an adequate defense." In other words, in his view the court erred in applying *Lomax* in a way other than a balancing analysis.

¶ 27. The State argues that Jones failed to establish what he is required to establish under *Lomax:* that "the alleged conflict . . . was so great that it likely resulted in a total lack of communication." Because the circuit court properly concluded that Jones had not met the test under *Lomax,* the State contends, it was irrelevant how far in advance of trial Jones made the request. In other words, the State points out, having been given no valid reasons for substitution, the court had nothing to balance.

¶ 28. We recognize that claims by a hearing impaired defendant that he or she was unable to communicate with counsel can raise significant issues and concerns different from those encountered by defendants without hearing impairment. However, we note here that Jones' legal argument does not turn on, or even significantly touch on, his hearing impairment; the argument—that the evidence of his frustration with the relationship is sufficient to justify permitting substitution, so long as there is no request to delay trial— would apply equally to a defendant with unimpaired hearing who was dissatisfied with the number of visits he had from counsel, and also unhappy with counsel's candid assessment of the strength of the defense case.[12] It is also clear on this record that Jones' need for

---

[12] Jones suggests in his brief that the attempts to communicate via letter were especially significant because telephone contact was not possible; the telephone at the Milwaukee Secure Detention Facility where Jones was in custody did not have a TTY, or telephone typewriter, a piece of telecommunications equipment often used by people who are deaf. Counsel did, however, send Jones at least three letters in reply that included detailed updates on the case and explained rescheduling of court dates and of visits; the record contains copies of counsel's letters to Jones dated August 18, August 30, and October 13, 2005.

interpreters in the courtroom was recognized and was a priority from the initial proceedings on. The court commissioner presiding over the preliminary hearing expressed willingness, without being asked, to reschedule the preliminary hearing if Jones preferred to have interpreters present, rather than to use the real-time court reporting system that required him to read the screen to follow what was spoken in court. The record also reflects the circuit court's attention to the scheduling and the active participation of the interpreters. At one point, one of the three sign language interpreters sworn in and present in the courtroom requested, and was granted, permission from the court to leave, and the following exchange took place:

> [Interpreter]: [I]t is my professional opinion that Mr. Jones' communication needs are being met. And so I in the best interest of the court am going to leave and save some time and money for the court.
>
> . . .
>
> [Counsel]: So I trust this means that if Mr. Jones testifies, the two remaining interpreters will have no problem.
>
> The Court: I think that is what Ms. Burckhardt [the first interpreter] is telling us. And I see Ms. Kerkvliet [the second interpreter] nodding, and I am certain that Ms. Peplinski [the third interpreter] would speak up if she thought that the two of them could not meet Mr. Jones' needs.

¶ 29. We therefore address the question Jones raises as to the nature of the test prescribed in *Lomax.* As noted above, *Lomax* says that a reviewing court must "consider a number of factors" and it says that such factors include the three mentioned above: an

adequate inquiry by the circuit court, the timeliness of the request, and whether the alleged attorney-client conflict results in "a total lack of communication" that prevented the defendant from mounting an adequate defense. *Lomax,* 146 Wis. 2d at 359. "The trial judge presiding over the evidentiary hearing will be informed of the specific reasons for the defendant's dissatisfaction with his counsel, and the court will be able to evaluate those reasons." *Id.* at 362.

¶ 30. We note that the cases on which the *Lomax* court relied when it set forth its test recite the test as a multi-factor test. The test articulated in *Lomax* is a standard and widely used test[13] for evaluating a court's denial of a substitution motion. Our review of those cases shows that the test is routinely applied as a straightforward factors test without reference to "balancing" of particular factors. The *Lomax* court gave no indication that it intended to alter the standard test it was adopting. It appears evident that the statement in *Lomax* about balancing "timeliness" with the third factor, the total lack of communication, was not in-

[13] *See, e.g., United States v. DeTemple,* 162 F.3d 279, 288 (4th Cir. 1998) (stating in its analysis that the motion was timely, the district court's inquiry was adequate, and "[t]hus, the remaining question—whether the conflict . . . became so great that it resulted in a total lack of communication preventing an adequate defense—is determinative here"); *United States v. Calderon,* 127 F.3d 1314, 1343 (11th Cir. 1997)("[S]everal factors that should be considered by a reviewing court have been identified . . . ."); *United States v. Zillges,* 978 F.2d 369, 372 (7th Cir. 1992) ("[T]his court should consider several factors[.]");*United States v. McClendon,* 782 F.2d 785, 789 (9th Cir. 1986) ("In applying the . . . rule, three factors are considered"); *United States v. Allen,* 789 F.2d 90, 92 (1st Cir. 1986) ("[T]he appellate court should consider several factors").

tended to create for Wisconsin a novel application of a well-established test. Rather, it was meant to convey that some factors weigh more heavily than others in the analysis, depending on the circumstances, and that the definition of "timely" will also depend on the circumstances. For example, we stated with regard to timeliness, "[I]t is possible that the conflict between the defendant and counsel arose on the day of trial and therefore the request for change of counsel was timely." *Id.* at 362. In describing the test adopted in *Lomax,* this court was acknowledging the wide variety of circumstances in which a circuit court makes its determinations concerning substitution of counsel requests, and not prescribing a balancing test.

██

¶ 31. Having established that the analysis is properly one of considering multiple factors, we turn to the application of the test in this case. Our analysis begins with consideration of the first of the enumerated factors in *Lomax,* the adequacy of the court's inquiry into the defendant's complaint. The circuit court set a hearing, at which it asked Jones for his reasons for requesting substitute counsel, and directly asked counsel for a response to the reasons given by Jones. When the issue arose again just prior to trial, the circuit court again gave Jones an opportunity to explain his reasons. When the court heard that part of his complaint related to an inability to review together one piece of evidence, a videotape, the court resolved the problem. Jones does not argue that the circuit court should have inquired further into his complaints, including his assertion that counsel was colluding with the prosecutor; that is, he does not contest the adequacy of the court's inquiry into the complaint. It is clear to us that the inquiry was certainly adequate.

¶ 32. The second factor we consider is the timeliness of Jones' motion. Following remand from the court of appeals, when the circuit court, with Judge Dennis P. Moroney then presiding, held a retrospective hearing, it acknowledged that "there would have been probably plenty of time probably to get another attorney on board," without jeopardizing the trial date. The court of appeals, when the matter was appealed again after the circuit court's retrospective hearing, did not reach the question of timeliness. As Jones points out, trial was set for February, nearly four months after the October 2005 request for substitution. The original trial date (rescheduled by the circuit court for other reasons, and not in response to Jones' request) had been in September, about four months after Jones' trial counsel was appointed. The State appears to concede that the motion was timely, and instead argues that other factors weigh more heavily. Especially given that counsel specifically stated that Jones did not wish to adjourn the trial, Jones' request to substitute and Jones' counsel's motion to withdraw were timely. Given the nature of the test set forth in *Lomax,* however, the timeliness factor is by itself not dispositive in regard to the analysis.

¶ 33. The third of the factors identified in *Lomax* for the reviewing court's consideration is "whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case." *Id.* at 359. As noted above, when the circuit court questioned both Jones and counsel at the motion hearing and then questioned Jones again just prior to trial, the circuit court was able to determine that there was not "a total

lack of communication" between Jones and counsel. The circuit court, at the retrospective hearing upon remand, heard further testimony about the conflict. It identified the "real crux of this whole case" as "whether or not[,] based upon the defendant's communication to and with [the attorney] and vice versa, whether or not they can collectively establish a sufficient rapport so as to have the constitutional rights of right to counsel under [the] Sixth Amendment be properly protected." This is the *Lomax* "alleged conflict" factor stated in positive form. The evidence concerning the communication between Jones and his trial counsel included the following: letters from counsel to Jones, testimony that Jones did not dispute that counsel met and reviewed discovery with him, the court's observation of Jones' communications with counsel, Jones' mother's testimony that she did not know sign language and never used it to communicate with her son, and the fact that the inmates who assisted Jones in writing his letters did not know sign language either. Further, as noted above, Jones asserted to the court on the record his intention to discuss with counsel the decision about whether to testify and how the interpreters would facilitate that if he chose to do so; he was given time to discuss those issues with counsel prior to making the decision.

¶ 34. Given that evidence, we agree with the court of appeals that in this case, "[t]he record amply supports the circuit court's conclusions that Jones and his trial counsel communicated effectively without a sign language interpreter." *Jones II,* ¶ 12. Because the circuit court considered the relevant factors, applied a proper standard of law as set forth in *Lomax,* and reached a conclusion a reasonable judge could reach, there was no erroneous exercise of discretion in denying

404

his request for substitution of counsel, and therefore the order denying the post-conviction motion for a new trial was proper.

## B.

¶ 35. The second issue we consider is whether in denying Jones' substitution request, the circuit court violated Jones' alleged constitutional right to counsel of choice under the Wisconsin and United States constitutions. Jones argues that, given the Wisconsin SPD's policy[14] of appointing substitute counsel upon the first request to do so, a court cannot deny an indigent defendant's request to reject counsel and substitute counsel unless grounds exist, such as delay of trial or conflict of interest, that would justify denying substitution for a similarly situated defendant represented by retained counsel. In other words, Jones argues, the existence of PD § 2.04 puts defendants with retained and with appointed counsel on the same footing. Further, Jones contends that cases that include statements regarding indigent defendants' right to counsel of choice have never squarely addressed the issue. He also argues that there is a difference between holding that an indigent defendant does not have a right to choose counsel he cannot afford, and holding that an indigent

[14] Wis. Admin. Code PD § 2.04. Person's right to refuse specific attorney

(1) A person may request that the attorney assigned to represent him or her be discharged and that another attorney be assigned, and the state public defender shall honor such request, provided:

a. It is the only such request made by the person in that case; and

b. Such change in counsel will not delay the disposition of the case or otherwise be contrary to the interests of justice.

defendant has no right to substitute for another available public defender. Jones therefore argues that because the denial violated his right to reject his initially appointed counsel and substitute for available counsel under Wis. Admin. PD § 2.04, the denial was error and he is entitled to a new trial.

¶ 36. The State argues that cases from the United States Supreme Court and this court unequivocally establish that Jones has no such right. Rather, it asserts that as an indigent defendant, he has a right to the effective assistance of counsel, not to counsel of his choice. The State argues that the administrative code provision governing the SPD is not relevant to the analysis, because such a code provision cannot be read to limit the authority of a circuit court to make determinations about substitution of counsel. Further, the State points to the fact that the SPD itself does not consistently interpret the provision to require substitute appointed counsel for indigent defendants,[15] and argues that the inconsistent application of the provision illustrates that an administrative code provision is a shaky foundation for a claim of a violation of a constitutional right. The State directs our attention to a fact sheet given by the SPD to indigent defendants, which states,

> Can I fire my appointed attorney and get a different one?

---

[15] Jones' brief acknowledges the differences in the interpretation of Wis. Admin. PD § 2.04 by the Trial Division and the Appellate Division of the State Public Defender. He quotes Judicial Counsel Note, 2001, to Wis. Stat. § (Rule) 809.30(4):

> [At the appellate level] [t]he state public defender will not appoint successor counsel where a defendant disagrees with the legal conclusions of appointed counsel or when a defendant wants a second opinion as to the merits of an appeal.

> Under some circumstances, yes. . . . The Public De-
> fender will appoint a second attorney after the court
> has given permission to the first attorney to withdraw
> from providing representation in the case.

The State points out that in the ordinary case, substitution will likely cause some delay in the disposition of the case. Finally, the State notes that where the dispute is over the merits of the case, there is little reason to think that substituting counsel will solve anything. Because there is no constitutional violation here, the State contends that the circuit court did not err in denying substitution of counsel.

¶ 37. We find Jones' arguments unpersuasive. First, we do not see the right to reject appointed counsel and proceed pro se,[16] as the equivalent of a right to reject appointed counsel and have new counsel appointed, and Jones has directed us to no case that has viewed it as such.

¶ 38. Second, the cases in which courts have reversed convictions based on erroneous denials of motions for substitution of counsel involve defendants with retained counsel; those cases without exception explicitly state that the right to choice of counsel is by necessity limited to defendants with retained counsel.[17] For example, in *United States v. Gonzalez-Lopez,* 548 U.S. 140

---

[16] *See, e.g., Faretta v. California,* 422 U.S. 806, 819 (1975) (holding that the trial court's appointment of a public defender despite defendant's knowing and voluntary request to represent himself was unconstitutional, writing, "[T]he right to self-representation—to make one's own defense personally—is . . . necessarily implied by the structure of the [Sixth] Amendment.").

[17] Even if the case law were not clear and unwavering on this point, we would be skeptical of the parameters of the constitutional right that Jones advocates. As the State argues, Jones' proposed constitutional right to substitute, based on Wis. Admin. Code PD § 2.04, is a right to substitute only once, and it

(2006), the United States Supreme Court ruled that a district court's denial of admission pro hac vice based on a misinterpretation of a rule of conduct erroneously deprived the defendant in that case of his choice of counsel. Although the government had argued that a showing of prejudice was necessary to sustain a reversal based on a Sixth Amendment claim, the Court held that a choice-of-counsel claim does not require a showing of prejudice. Instead, it concluded that the proper remedy was reversal of the conviction. However, the Court made it clear that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151.

¶ 39. Similarly, in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25 (1989), the Court stated,

is grounded on a provision that is not interpreted consistently even by the SPD's own trial and appellate divisions. We also note that Wis. Stat. § 977.08 states:

> Appointment of counsel.(1) If the representative or the authority for indigency determinations . . . refers a case to or within the office of the state public defender . . . , the state public defender shall assign counsel according to subs. (3) and (4). *If a defendant makes a request for change of attorney assignment, the change of attorney must be approved by the circuit court.*

(Emphasis added.) Jones contends that the circuit court would still be required to approve change of counsel but could deny requests only on the same grounds it would do so for defendants with retained counsel.

We again note that the information given by the SPD to an indigent defendant states that appointment of a second attorney is only "after the court has given permission to the first attorney to withdraw . . . ." In any event, it appears that one of his primary reasons for conflict with appointed counsel was their differing views of the strength of his defense case, and counsel's prediction—correct, as it turned out—that Jones would be convicted and would not prevail on appeal.

> Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond 'the individual's right to spend his own money to obtain the advice and assistance of . . . counsel.'

*Id.* at 626. In that case, the defendant, indicted under a federal statute that authorized forfeiture of assets obtained in violation of drug laws, had entered a plea agreement and agreed to forfeit the assets. That forfeiture, in effect, prevented the defendant's retained counsel from collecting its attorney fees. Defense counsel then sued, challenging the constitutionality of the forfeiture statute on the grounds that such a forfeiture deprived the defendant of his Sixth Amendment right to select his preferred counsel. The Court disagreed, holding that the Sixth Amendment right to counsel guarantees effective representation, not counsel that a defendant cannot afford. *Id.* It also held that forfeited assets were not rightly the defendant's in the first place. *Id.*

¶ 40. This court, likewise, has held that it was error for a circuit court to deny a defendant's request for substitution of retained counsel following the conviction for purposes of representing the defendant at sentencing. However, while so holding, this court noted,

> This court has frequently said that, except in cases of indigency, a defendant may have whatever counsel he chooses to retain and may refuse to accept the services of counsel he does not want. . . . When there is no evidence that the proposed counsel is inadequate and when there is no evidence that a change of counsel is made for the purpose of delay, it is an abuse of discretion to refuse a request for retained counsel or for substitution of counsel.

*Mulkovich v. State,* 73 Wis. 2d 464, 474, 243 N.W.2d 198 (1976).

¶ 41. Jones contends that the cases from this court and the United State Supreme Court excepting indigent defendants from the right to counsel of choice are poorly reasoned and do not in fact mean that a defendant has no choice whatsoever in regard to counsel. Absent any indication from the United States Supreme Court of the accuracy of that interpretation, we are not prepared to construe its case law in such a way. To the contrary, we believe that these cases accurately represent the established law on this point and recognize the adequacy of the constitutional protections already in place as well as the realities of an overburdened criminal justice system. Jones has not contended that the assistance he received from his counsel was ineffective. We note that the jury acquitted him of one serious charge and infer from that fact and the remainder of the record that trial counsel was adequately prepared for trial. See *Morris v. Slappy,* 461 U.S. 1, 12 (1983) (observing that the defense attorney's success in getting a hung jury on the accused's more serious charges necessarily reflected "favorably on [the attorney's] readiness for trial."). However, as an indigent defendant, he is not entitled to be represented by counsel of his choice.

¶ 42. We therefore find that the denial of the request for substitution did not violate Jones' constitutional rights under either the United States or Wisconsin constitutions, and the motion for a new trial on those grounds was correctly denied.

## IV. CONCLUSION

¶ 43. The issues presented are first, whether Jones is entitled to a new trial on the grounds that the circuit court wrongly denied his request for substitu-

tion of counsel, and second, whether he is entitled to a new trial on the grounds that such a denial violates rights guaranteed by the Wisconsin Constitution and the Sixth Amendment to the United States Constitution.

¶ 44. We agree with the court of appeals that the circuit court, in denying Jones' motion for a new trial, considered the relevant factors, including Jones' stated reasons for wanting new counsel and his ability to read written English and to speech read, and applied a proper standard of law as set forth in *Lomax*. Because the circuit court did so and reached a conclusion that a reasonable judge could reach, there was no erroneous exercise of discretion in denying his request for substitution of counsel, and therefore the order denying the post-conviction motion for a new trial was proper.

¶ 45. We reject as well Jones' argument that indigent defendants with appointed counsel have a right, under the constitutions of Wisconsin and the United States, to reject appointed counsel in favor of substitute counsel. Jones has not cited any case where a court has so held, and we are unaware of any. Of course, nothing bars a defendant from requesting substitution of counsel, nothing bars the SPD from choosing to make substitute counsel available, and nothing bars a court from granting such a request. The question is whether a court is required by the Sixth Amendment to the United States Constitution or by Article I, Section 7 of the Wisconsin Constitution to do so solely because a defendant requests it. This court and the United States Supreme Court have held that it does not. As the Seventh Circuit Court of Appeals put it, the Sixth Amendment does not guarantee "a friendly and happy attorney-client relationship,"[18] but rather effective assistance of counsel. Even if Jones was

---

[18] *Mutuc,* 349 F.3d at 934.

dissatisfied with the number of letters and visits from his counsel, and took offense at counsel's assessment of the strength of the case, it is evident from the record that counsel visited Jones, wrote him letters, conveyed plea offers, reviewed discovery with him and discussed with him during trial matters such as the defendant's decision about whether to testify. It is clear that the two communicated and that an adequate defense was presented. There was therefore no violation of Jones' right to counsel under the Sixth Amendment to the United States Constitution and under the Wisconsin Constitution, and the circuit court properly denied Jones' motion for a new trial on that basis.

¶ 46. Accordingly, we affirm the court of appeals decision affirming the denial of Jones' motion for a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. ANN WALSH BRADLEY, J. (*concurring*). In *United States v. Gonzalez-Lopez*,[1] by a 5–4 vote, the United States Supreme Court unearthed a heretofore unrecognized constitutional right to choice of counsel. It is a qualified right, however. It is enjoyed only by defendants with sufficient money to hire an attorney.

¶ 48. I write separately to alert parties and courts to this significant change in the law, in part because the violation of this right carries with it the stark consequence of automatic reversal of conviction. I also write separately because I am troubled that the Court has recognized a new constitutional right that applies only to defendants of means. The asymmetrical assignment

---

[1] *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006).

of constitutional rights based on wealth is difficult to reconcile with traditional concepts of equal justice under the law.

¶ 49. Accordingly, although I agree with the majority that the circuit court did not erroneously exercise its discretion and that Jones has not established a Sixth Amendment violation here, I respectfully concur.

## I

¶ 50. *United States v. Gonzalez-Lopez* marks a major doctrinal change of direction in the Court's Sixth Amendment right to counsel jurisprudence. Previously in *Wheat v. United States,* 486 U.S. 153, 159 (1988), the Court explained that the Sixth Amendment guarantee of a fair trial was the basis for both the right to effective counsel and the right to counsel of choice.[2] In *Gonzalez-Lopez,* the Court breathed new life into the right to counsel of choice for those who can afford to retain an attorney by giving the right its own separate place within the Sixth Amendment. No longer does the right to counsel of choice for defendants with means emanate from the Sixth Amendment guarantee of a fair trial.

¶ 51. The *Gonzalez-Lopez* Court explained that the Sixth Amendment is now to be interpreted as providing two separate and independent guarantees— the right to effective counsel to ensure a fair trial and the right to counsel of choice for defendants of means.

---

[2] "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159 (1988).

The right to effective counsel is enjoyed by all defendants, regardless of financial status. If a defendant can demonstrate that either retained or appointed counsel was ineffective under the test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), then the Sixth Amendment right to effective counsel has been violated and the defendant is entitled to a new trial.

¶ 52. In describing the independent right to counsel of choice for those defendants who can afford to retain an attorney, the Court stated that this right commands not only "that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." 548 U.S. at 146. If a defendant is erroneously denied the right to representation by the attorney "he believes to be best," his constitutional rights have been violated.

¶ 53. Erroneous denial of the new and independent right to counsel of choice is considered "structural error." *Id.* at 148–49. This means that it matters not whether the defendant's second-choice counsel was in fact effective or whether the defendant's first-choice counsel would have performed any better. Thus, "it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Id.* at 148. Whenever the defendant's choice has been wrongfully denied, the defendant is entitled to a new trial. *Id.* at 150.

¶ 54. There is a lot on the line when a circuit court is asked to rule on a defendant's request for substitute counsel. Yet, *Gonzalez-Lopez* leaves unanswered many important questions, making the circuit court's exercise of discretion difficult. The consequence of an erroneous circuit court decision is stark.

414

¶ 55. In some cases, a circuit court will appropriately deny a defendant's request. The *Gonzalez-Lopez* Court explained that "the right to counsel of choice is circumscribed in several important respects," and nothing in the decision "casts any doubt or places any qualification upon [previous decisions] that limit the right to counsel of choice[.]" *Id.* at 144, 151. For instance, a defendant may not insist on representation by a person who is not a member of the bar or by an attorney who has a conflict of interest. *Id.* at 151–52.

¶ 56. *Gonzalez-Lopez* also appears to recognize "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Id.* at 152. However, the decision provides little guidance on how courts should balance a defendant's constitutional right with the demands of its calendar. It is unclear what magnitude of a scheduling inconvenience will counterbalance a defendant's constitutional right to counsel of choice.

¶ 57. Additional unanswered questions relate to how the *Gonzalez-Lopez* opinion will be applied to defendants with appointed counsel[3] who nevertheless pay for their representation. Since the mid-1990s, the

---

[3] There are two categories of indigent defendants: those who are statutorily indigent and those who are constitutionally indigent. Members of the former category are entitled to public defender representation based on legislative criteria. Members of the latter category, although not meeting the public defender criteria, are nevertheless entitled to representation under *Gideon v. Wainwright,* 372 U.S. 335 (1963). *See State v. Dean,* 163 Wis. 2d 503, 512–13, 471 N.W.2d 310 (1991) (concluding that the creation of the public defender did not abrogate the circuit court's duty to appoint counsel where the public defender has declined to act but appointment of counsel is constitutionally required).

legislature has required the state public defender to seek reimbursement for services provided to indigent clients. Lola Velázquez-Aguilú, *Not Poor Enough: Why Wisconsin's System for Providing Indigent Defense Is Failing*, 2006 Wis. L. Rev. 193, 212 (2006) (citing Wis. Stat. § 977.06(1)(d); Wis. Admin. Code PD § 6.01). One method of reimbursement allows the client to elect to pay a one-time reduced amount within sixty days of the appointment of counsel. *Id.* at 213 (citing Wis. Admin. Code PD §§ 6.01, 6.02).

¶ 58. In counties all over this state, circuit courts appoint counsel for constitutionally indigent defendants who do not meet the public defender appointment guidelines. Generally when circuit courts appoint such counsel, the defendant is required to reimburse the county on a payment schedule.

¶ 59. How does the reimbursement affect, if at all, the *Gonzalez-Lopez* right to counsel of choice? If it does not affect the initial choice, does it affect the right to continue an ongoing attorney-client relationship?[4]

¶ 60. I fear that the *Gonzalez-Lopez* decision will occupy courts for years as they attempt to interpret and apply its newly contoured constitutional right. Given

---

[4] One commentator advances that the repayment obligations "when considered in light of the constitutional values underlying the right to retain counsel of choice, militate in favor of recognizing a limited right of indigent criminal defendants to select which attorney is assigned to defend them." Wayne D. Holly, *Rethinking the Sixth Amendment for the Indigent Criminal Defendant: Do Reimbursement Statutes Support Recognition of a Right to Counsel of Choice for the Indigent?*, 64 Brook. L. Rev. 181, 183 (1998). Another suggests that it may not affect the initial right to choose, but should affect the right to continue the existing attorney-client relationship. Janet C. Hoeffel, *Toward A More Robust Right to Counsel of Choice*, 44 San Diego L. Rev. 525, 549 (2007).

the uncharted course, circuit courts should study the teachings of *Gonzalez-Lopez* when deciding whether to grant a request for substitute counsel. The stark consequence of automatic reversal of conviction demands a careful exercise of discretion.

## II

¶ 61. The *Gonzalez-Lopez* Court bluntly explained that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." 548 U.S. at 151. Therefore, under *Gonzalez-Lopez,* some defendants enjoy two Sixth Amendment rights relating to the assistance of counsel, and other defendants who are indigent enjoy only one of these rights. Because the right to counsel of choice does not apply to an entire class of defendants, *Gonzalez-Lopez* is difficult to reconcile with the American ideal of equal justice under law.

¶ 62. It is particularly troubling for Wisconsin courts to be bound to a holding that places a credit check on the constitutional right to counsel of choice. Wisconsin was at the forefront of recognizing the importance of guaranteeing all criminal defendants access to counsel—regardless of their wealth.

¶ 63. In 1859, more than one hundred years before the United States Supreme Court made a similar pronouncement in *Gideon v. Wainwright,* 372 U.S. 335 (1963), the Wisconsin Supreme Court held that indigent defendants were entitled to counsel furnished at government expense. In *Carpenter v. County of Dane,* 9 Wis. 249, 251 (1859), Justice Cole emphasized that it would be a "mockery" of our "constitutional guaranties" to deny "paupers" the right to counsel enjoyed by others:

417

[It would be] like mockery to secure to a pauper these solemn constitutional guaranties for a fair and full trial of the matters with which he was charged, and yet to say to him when on trial, that he must employ his own counsel who could alone render these guaranties of any real permanent value to him.

*Id.*

¶ 64. The Sixth Amendment guarantees a variety of rights "in all criminal proceedings" including the right to a public trial, the right of an unbiased jury, and the right "to have the assistance of counsel." No one would seriously suggest that only defendants of means have a right to a public trial, or only those who have sufficient money have the right to an unbiased jury. Yet, the *Gonzalez-Lopez* Court selected the right to assistance of counsel of choice and made it contingent upon financial status.

¶ 65. In addition to recognizing a constitutional right for one class of defendants and not for another, the remedy adopted in *Gonzalez-Lopez* further widens the gulf between indigent defendants and those who can afford to retain an attorney. To be entitled to a new trial, indigent defendants must demonstrate that their appointed counsel's performance was ineffective—a significant hurdle to overcome.

¶ 66. This court has explained that an attorney's performance "need not be perfect, nor even very good, to be constitutionally adequate." *See, e.g., State v. Carter,* 2010 WI 40, ¶ 22, 324 Wis. 2d 640, 782 N.W.2d 695. When evaluating effectiveness, the court applies "a heavy measure of deference to counsel's judgments." *Id.,* ¶ 23. Even if the defendant successfully demonstrates that counsel's performance was deficient, the defendant must also demonstrate a reasonable prob-

418

ability that the deficient performance had an adverse effect on the outcome of the proceeding. *Id.*, ¶ 37.

¶ 67. By contrast, defendants who can afford to retain an attorney need not make such a showing if they were denied representation by their attorney of choice. Rather, those defendants need to show only that the court should not have denied representation by counsel of choice, and a new trial is automatic.

¶ 68. This case demonstrates the disparate treatment of rich and poor defendants. Jones' attorney asked to withdraw from the case so that a new attorney could be appointed. That motion was denied. If Jones had the resources to retain an attorney, the circuit court's denial of the motion four months in advance of trial would likely be considered structural error, and a new trial would be granted. However, because Jones was dependent upon the office of the state public defender for representation, he had no right to counsel of choice, and he has no recourse unless he can show that his appointed attorney's performance was ineffective.

¶ 69. I cannot reconcile, under our system of equal justice, that a constitutional right viewed as so robust that its violation amounts to structural error can be contingent upon a credit check. Nevertheless, this concurrence should not be viewed as advocating an unbridled extension of that right. Providing indigent defendants with unfettered choice of counsel would impose impossible administrative burdens on the office of the state public defender and on circuit courts. I believe that the Court was correct in *Wheat* when it explained that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." 486 U.S. at 159.

¶ 70. For the reasons set forth above, I respectfully concur.

¶ 71. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence.