# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 25, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1894-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF4927

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DWAYNE R. CHANEY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: CAROLINA STARK and JANET C. PROTASIEWICZ, Judges. *Affirmed*

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Dwayne R. Chaney appeals a judgment of conviction, following a jury trial, of first-degree intentional homicide with the use of a dangerous weapon.  Chaney also appeals from the order denying his postconviction motion for relief.  Chaney contends that the trial court denied his right to counsel when he requested new counsel just prior to the start of his trial.  He also contends that he received ineffective assistance of counsel.  Upon review, we affirm the conviction and the postconviction order.

## BACKGROUND

¶2     The State charged Chaney with one count of first-degree intentional homicide with the use of a dangerous weapon and possession of a firearm after being adjudicated delinquent.  The complaint alleged that on November 10, 2015, Chaney shot Michael Prescott.  Prescott was the boyfriend of Chaney's former girlfriend, C.H.  The complaint further alleged that at the time of the shooting, Prescott was warming up C.H.'s car while she was standing in the doorway of her residence.  Chaney ran up to the driver's side of the vehicle and shot Prescott.  C.H. ran inside her residence and was followed by Chaney, who struck C.H. in the head and yelled, "It's your fault!  Now I'm going to jail for the rest of my life!"  Chaney then fled the residence.  The United States Marshals Service and the Milwaukee County Sheriff's Department apprehended Chaney approximately eighteen months later.

¶3     Chaney's trial counsel filed a demand for a speedy trial.  The trial was scheduled for September 18, 2017.  That day, the State moved for an adjournment because it had received new evidence.  The trial court granted the adjournment and ordered Chaney released from custody on a signature bond, with

GPS monitoring. The trial court rescheduled the trial for Monday, October 16, 2017.

¶4 On Friday, October 13, 2017, at the final pretrial conference, Chaney's trial counsel informed the trial court that Chaney wanted to fire him. Chaney told the court: "I just feel like he don't represent me, like, lack of communication, incidents when counsel and I talk, like, he is not there. What I ask him to do, he brushes it off; I don't feel comfortable, I should feel a situation where what I say, I don't feel right." The trial court denied Chaney's request, stating:

> Okay. So, Mr. Chaney, you have a constitutional right to be represented by an effective attorney, the right to be represented by an effective attorney does not mean the right to be represented by an attorney of your choice or even an attorney that you like or get along with in that way. It has to be an effective attorney.
>
> And at this point, particularly because we are so far along in the case and so close to a trial date, at this point, I will only allow a change of attorney if one of two things happens. If I have information to conclude that there is a conflict of interest that prohibits [trial counsel] from representing you, or, under circumstance number two, if I have been given information that would allow me to conclude that he's not being an effective attorney for you.
>
> At this point, I don't have information to support a conclusion that there is a conflict of interest that prohibits him from representing you; and I don't have information to conclude that he's not being an effective attorney for you, that he will not continue to be an effective attorney for you.

¶5 The matter proceeded to trial where multiple witnesses testified. C.H. testified and effectively recanted her statement to police, telling the jury that she did not recall telling an officer that Chaney shot Prescott. C.H. testified that she saw an armed man shoot the victim, but she claimed she did not recognize the man. C.H. further testified that the man followed her into her home, but did not

engage in a physical struggle with her and did not say anything. C.H. admitted to sending her mother a text the day before the trial, in which she said that she would not "testify against him … and make him get life in prison without him ever seeing [his daughter] again."

¶6 The State impeached C.H. through the testimony of Detective Luke O'Day, who testified that he interviewed C.H. shortly after the shooting and that she identified Chaney as the shooter. O'Day testified that C.H. told him that on the morning of the shooting, she asked Prescott to warm up her car. She observed Prescott start the car and then heard someone call out to her, at which point she saw an armed Chaney headed towards the vehicle. C.H. told O'Day that she saw Chaney fire once into the vehicle. O'Day further testified that C.H. said that Chaney followed her into her home, a struggle ensued, and Chaney said something to the effect of "this is your fault … I am going to prison for life."

¶7 C.H.'s stepfather, R.R., testified that C.H. called him on the day of the shooting and said that Chaney had shot Prescott. R.R. also testified that a few weeks prior to the shooting, he heard an altercation between Chaney and Prescott in which Chaney accused Prescott of breaking his car window, and that Chaney was armed.

¶8 The jury also heard the recording of the 911 call that was made following the shooting. Detective Michael Walisiewicz testified that he collected and reviewed the 911 recording. Walisiewicz testified that in the "open line" call, there are male and female voices in background, with the male saying "something along the line of I'm going to jail for the rest of my life" and the female saying

"something to the effect of why did you do that and mentions the name Wayne." In the recording, a female voice is heard saying, "Oh my God, Wayne."[1]

¶9    Chaney's employer also testified that Chaney did not come to work the day of the shooting and did not collect his final paycheck. A detective with the Milwaukee County Sheriff's Office testified that Chaney was found and arrested eighteen months after the shooting.

¶10    The jury found Chaney guilty of first-degree intentional homicide and possession of a firearm by a person who had been adjudicated delinquent. On the intentional homicide count, the trial court imposed a sentence of life in prison without eligibility for release to extended supervision. On the possession of a firearm count, the trial court imposed five years of initial confinement and five years of extended supervision, consecutive to any other sentences.

¶11    Chaney moved for postconviction relief, asserting that he was denied the right to counsel and that his trial counsel was ineffective. Specifically, Chaney alleged that the trial court erroneously exercised its discretion by denying his request to fire his attorney and that trial counsel was ineffective for: (1) failing to present evidence of C.H.'s motive to lie in 2015 when she identified Chaney as the shooter; (2) failing to object to hearsay from a nontestifying declarant identifying him as the shooter; and (3) failing to object to Walisiewicz's testimony about statements made on the 911 recording as an improper lay opinion, or to request a cautionary instruction. The postconviction court denied Chaney's ineffective assistance of counsel claim without a hearing, concluding that any deficient

---

[1] C.H. testified that she occasionally referred to Chaney as "Wayne."

performance did not prejudice Chaney; however, the postconviction court granted a retrospective *Lomax*[2] hearing on the issue of whether Chaney was denied his right to choose counsel.

¶12 At the hearing, the postconviction court heard testimony from Chaney, his aunt, his trial counsel, and Attorney Ben Peirce, who Chaney claimed agreed to take over his case. The postconviction court ultimately denied Chaney's motion, finding that Chaney's intent was to delay his trial to remain out of custody. This appeal follows.

## DISCUSSION

¶13 On appeal, Chaney contends that the trial court violated his right to choose his counsel, that the postconviction court erroneously denied his request for a new trial following the *Lomax* hearing, and that the postconviction court erroneously rejected his ineffective assistance of counsel claims without an evidentiary hearing. We disagree.

### Chaney's Choice of Counsel

¶14 "Whether trial counsel should be relieved and a new attorney appointed is a matter within the trial court's discretion." *State v. Jones*, 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378. We will uphold a discretionary decision if the trial court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion a reasonable judge could reach. *See id.*

---

[2] *See State v. Lomax*, 146 Wis. 2d 356, 359, 363-64, 432 N.W.2d 89 (1988).

¶15    We consider the following factors to determine whether the trial court properly exercised its discretion in deciding a request for new counsel:

> (1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense and frustrated a fair presentation of the case.

*See **Lomax***, 146 Wis. 2d at 359.

¶16    Here, the postconviction court conducted a retrospective hearing where it heard testimony from multiple witnesses and considered the ***Lomax*** factors. *See id.* at 365 ("When a trial court has not made an adequate inquiry into a defendant's last-minute request to discharge appointed counsel, a retrospective hearing, at which the defendant may present whatever he deems necessary to fully articulate his reasons for wanting counsel discharged, strikes a proper balance between the constitutional rights of defendants and the efficient administration of justice.").

¶17    At the hearing, Chaney testified he wanted to fire his trial counsel in June or July of 2017, but admitted that he did not try to do so until October 13, 2017—the Friday before the start of his October 16, 2017 trial. Chaney stated that he began inquiring about other attorneys in September 2017 and ultimately found an attorney, Ben Peirce, who "was going to take the case." Chaney testified that Peirce said that "if the judge give us a continuation, have a judge call him; and he was going to take the case."

¶18    Chaney's trial counsel also testified, telling the court that Peirce emailed him after Chaney contacted him. Trial counsel testified that Peirce's email said, "Yikes. I have no interest or desire to take this case but thought it

7

apropo[s] to give you a headsup." Peirce's email stated that he would tell Chaney that he would not take the case. Trial counsel testified that Chaney told him that Peirce was taking his case, but that trial counsel knew that was untrue.

¶19 Peirce also testified, telling the court that Chaney contacted him on October 9, 2017. Peirce said that Chaney never actually asked him to take the case, and that he never told Chaney he would take the case. Peirce said that he had never handled a homicide and did not "know why Mr. Chaney would have thought that I would have taken his case."

¶20 The record supports the postconviction court's determination that Chaney's attempt to fire trial counsel was a delay tactic intended to keep him out of custody. Moreover, the record does not support Chaney's assertion that another attorney was available to take his case. Quite the contrary, Peirce testified that Chaney neither asked him to take case, nor did Peirce intend to represent Chaney. Indeed, the only factor in Chaney's favor is the fact that his October 13, 2017 request was his first request; however, as the State points out, that request was effectively made on the eve of trial. Accordingly, we disagree with Chaney's contention that the postconviction court misapplied the *Lomax* factors and conclude that the postconviction court properly exercised its discretion.

### Ineffective Assistance of Counsel

¶21 Chaney also contends that his trial counsel was ineffective for: (1) failing to present evidence of C.H.'s motive to lie in 2015 when she identified Chaney as the shooter; (2) failing to object to hearsay from a nontestifying declarant identifying him as the shooter; and (3) failing to object to Walisiewicz's testimony about statements made on the 911 recording as an improper lay opinion, or to request a cautionary instruction. Chaney argues that

8

the cumulative effect of trial counsel's deficiencies were prejudicial to his case and that the postconviction court erred in denying his motion without a hearing. We disagree.

¶22     Whether a defendant's postconviction motion alleges sufficient facts regarding ineffective assistance of counsel to entitle a defendant to a hearing is a question of law that we review *de novo*. *See **State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the postconviction court may properly deny the motion without holding an evidentiary hearing. ***Id.***

¶23     To succeed on a claim of ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice. *See **Strickland v. Washington***, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." ***Id.*** at 690. We examine trial counsel's performance with great deference; the defendant must overcome a strong presumption that trial counsel's performance was reasonable. *See **State v. Trawitzki***, 2001 WI 77, ¶40, 244 Wis. 2d 523, 628 N.W.2d 801. To prove prejudice, a defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial and a reliable outcome. ***Strickland***, 466 U.S. at 687. We need not address both the deficiency and prejudice prongs if the defendant has failed to establish one of them. *See **State v. Mayo***, 2007 WI 78, ¶61, 301 Wis. 2d 642, 734 N.W.2d 115. On appeal, we uphold the postconviction court's findings of fact unless they are clearly erroneous. *See **State v. Pitsch***, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). However, whether those facts

constitute prejudicially deficient performance is a question of law we review *de novo*. *See* ***id.***

¶24 Assuming, without deciding, that Chaney's complaints constitute legitimate deficiencies in trial counsel's performance, we disagree that the alleged errors prejudiced Chaney's case, even under a cumulative prejudice standard. *See* ***State v. Thiel***, 2003 WI 111, ¶58, 264 Wis. 2d 571, 665 N.W.2d 305 (to find cumulative prejudice, we must find that the effect of multiple deficiencies prejudiced the defendant and undermined confidence in the outcome of the trial). The jury heard testimony from R.R. stating that C.H. called him after the shooting and said that Chaney had shot Prescott. The jury also heard testimony that Chaney did not go to work the day of the shooting, did not collect his paycheck, and was not found until eighteen months later. The jury also heard the 911 recording from the incident in which a female voice says, "Oh my God, Wayne." Moreover, the jury heard testimony from O'Day detailing his conversation with C.H. following the shooting. O'Day testified that C.H. identified Chaney as the shooter. Although C.H. effectively recanted her statement while testifying, she admitted to texting her mother, "I won't go in there and testify … I'm flipping the page here." Given the overwhelming evidence of Chaney's guilt, Chaney's claims of deficiency do not undermine our confidence in the outcome. Accordingly, the postconviction court appropriately denied Chaney's motion without an evidentiary hearing.

¶25 For the foregoing reasons, we affirm the judgment of conviction and the order denying Chaney's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).